CASE 15—PETITION ORDINARY—DECEMBER 11.

# Commonwealth vs. Adams, &c.

**APPEAL FROM FRANKLIN CIRCUIT COURT.**

1. ."We, the undersigned, authorize Thomas Pearce, jr., to sign our names to any bond required by law of W. J. Brewer, sheriff elect of Henry county, September —, 1865." *Held*—That the agent under this power had no right, and was not authorized, to sign the names of his principals to the old revenue bond of Brewer, which had been executed in February, 1865; and that the agent transcended his authority, and his act in putting their names to said bond, is not obligatory on them.

2. Any bond required by law to be executed by a sheriff, should be regarded as an official bond, both in contemplation of the Constitution and the statute.

3. Persons who, in September, 1865, voluntarily signed their names to the sheriff's old bonds, which had been executed in February, 1865, became liable to the same extent as if they had signed their names to such bonds when they were first executed in February, 1865.

4. The county court had the power, as often as it deemed proper, to rule the sheriff to give additional sureties; and the signatures of the new sureties, whether signed to the old or new bonds, would make the bonds so signed by them official bonds as to such sureties.

JOHN RODMAN, Attorney General, and

JOHN M. HARLAN, ex-Attorney General,    For Appellant,

CITED—

*Rev. Stat.*, 2 *Stant.*, 261, 344, 339, 262, 396.

14 *B. Mon.*, 29 ; *Commonwealth for Hains vs. Teal*, &c.

W. S. PRYOR,                                    For Appellees,

CITED—

*Rev. Stat.*, 2 *Stant.*, sec. 3, p. 262 ; sec. 11, p. 260 ; secs.
1 and 2, p. 261 ; sec. 25, p. 244 ; sec. 3, p. 339.

6 *Monroe*, 581 ; *Dehart vs. Wilson*.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Brewer, being elected sheriff of Henry county at the February term, 1865, of the Henry county court, executed the general official bond, the revenue bond, and county levy bond.

September 18th, 1865, pursuant to an order of the county court to give additional security, G. C. Adams and Elston signed all of said bonds. September 23d, 1865, the court having required further security, the names of D. C. Adams, Barton, and Harford, were also signed to said bond, as additional sureties, by attorney.

Brewer, having collected a large amount of the State revenue, and having failed to pay it over, this motion was brought by the State to recover it on the revenue bond. The defendants, D. C. Adams, Barton, and Harford, set up that they gave the following power of attorney, and none other: "We, the undersigned, authorize Thomas Pearce, jr., to sign our names to any bond required by law of W. J. Brewer, sheriff elect of Henry county, September —, 1865." That, a few days previous to the court's last order, Brewer applied to them to become his surety on an additional bond, to be executed by him as sheriff, and thereupon they executed said power of attorney; that when it was given there was no order of court made requiring him to execute bond or give additional security; that, on the day of this last order, Brewer delivered said power of attorney to Pearce, the agent, who signed their names, without their knowledge or consent, to the original bonds executed in February, 1865; and they deny that these are their bonds; they deny the legal right of the county court to require additional security on the revenue bond of the sheriff, and ask to be exonerated.

The manifest object of both the sheriff and these sureties was to execute such bond as might be necessary and

legally required by the court of him, in order for his further continuance in office.

By the act of February 25, 1862 (*Myers' Supplement*, 395, *section* 2), it is made the duty of the sheriff to attend, two days, in each election district, to receive the taxes due the State, after giving thirty days' public notice, between the first day of September and fifteenth of October in each year. The time of so attending to receive the taxes is altered by the subsequent act of February 26, 1863 (*same book*, 396), from October 1st to November 15th, in each year; but by *section* 4 of the first named act it is made the duty of the sheriff, at the July, September, and November terms of the county court, to make a written statement, under oath, of the amount of revenue collected and in his hands, due the State, which statement shall be filed by order of the court, and a copy thereof transmitted by the clerk to the Auditor of Public Accounts; and it shall be the duty of the sheriff, immediately after making each statement, to pay into the public treasury the revenue in his hands, as exhibited by said statement, after deducting his commission for its collection; and thus the law stood when defendants' names were put to this bond by said agent under said letter of attorney.

If this bond is obligatory upon these appellees at all, it is so from its date, and fixes their liability for all delinquencies of the sheriff prior to the date of said letter of attorney; for this court cannot, by proof *aliunde*, fix the time when their names were attached, and hold them responsible only for future delinquencies of their principal.

By the first section of this act it is made the duty of the sheriff to proceed immediately after the first day of June in each year to collect the State revenue. It was the duty of the sheriff to report the amount collected in

July, September, and November, each year, and to pay it over; and it was the duty of the county court to record such report and have it forwarded through its clerk to the Auditor. The previous liability of Brewer, therefore, for the State revenue for the year 1865, should have been ascertained at the July and September terms of the Henry county court. Whether this had been done or whether he had paid it over, does not appear in this record, nor is it material in the solution of this legal question now under consideration. For it is evident that these sureties did not propose to become responsible for liabilities then accrued, nor to give a bond securing past defalcations, but contemplated only future responsibilities; and their letter only authorized their agent to execute such a bond, not being authorized to sign the old bond and fix his principal's responsibilities for liabilities already incurred by Brewer. The agent transcended his authority, and his act in putting their names to said bond, is not obligatory on them, and the judgment must be affirmed as to R. C. Adams, G. W. Barton, and W. R. Harford. But the other sureties having themselves signed said bond, other legal considerations must govern their rights.

The authority for the county court's proceeding to require additional security, is predicated on *section* 25, *article* 1, *chapter* 91, *Revised Statutes*, 2 *Stanton*, 344, which makes it the duty of the county court, "at the January term next after the sheriff shall give his *official bond, and oftener or sooner, as they may deem proper, to examine into the sufficiency of the sureties therein; and if the same be found insufficient, to rule him to give other sureties;* and upon his failure to do so, the court shall enter up an order suspending him from acting until he gives such sureties, or vacates his office."

It is insisted that this section only authorizes the court to rule him to new security on. the general official bond, and not upon the revenue or county levy bonds; and, therefore, that these latter received sureties are not liable on this bond.

By *section* 1, *article* 9, *chapter* 83, *Revised Statutes*, 2 *Stanton*, 261, "the sheriff, by virtue of his office, shall be collector of the revenue. *If he fail or refuse to execute bond, with surety, as required by law, for the collection of the revenue, he shall forfeit his office.*"

By *section* 2, *article* 1, *chapter* 91, *Revised Statutes*, 2 *Stanton*, 339, the sheriff, "before he enters upon the duties of his office, shall, in addition to the oath prescribed in the Constitution, take the following oath."

And by *section* three, "he shall also give an obligation to the Commonwealth, in substance as follows." Here follows the covenant, which appellees style the official bond, but which the statute nowhere designates as *the official bond*.

By *section* 9, *article* 6, *New Constitution of Kentucky*, it is provided that sheriffs, "and such other officers as the General Assembly may, from time to time, require, shall, before they enter upon the duties of their respective offices, and as often thereafter as may be deemed proper, *give such bond and security as may be prescribed by law.*"

In pursuance of this power, the Legislature has prescribed three bonds for the sheriff to execute—one securing the State revenue, another for the county levy, and another general bond, securing every individual who may be injured by his official acts. But who can say that one of these, to the exclusion of the others, is *the official bond?* Are they not really and legally all official bonds? As the statute forfeits the office unless he shall execute the *revenue bond*, if any one, to the exclusion of the others, should

be deemed *an official bond,* might it not appropriately be so styled?

But however this may be, both in contemplation of the Constitution and the statute, any bond required by law to be executed by the sheriff, should be deemed an *official bond.* And this would seem to be fortified by the provisions of *chapter 97, Revised Statutes, 2 Stanton,* 396, which was intended to provide a comprehensive remedy for the relief of sureties of all classes and in all obligations, and which provides for the relief of sureties *"in the official bond of any officer;* and which, we doubt not, affords a remedy for the sureties in either or all these three bonds required by law for the sheriff to execute.

As the non-payment of the revenue due the State, as required by law, is made a cause of forfeiture of the office by *section 1, article 9, chapter 83, Revised Statutes,* we have no doubt but the county court could rule the sheriff to secure, by new bond, the money then in his hands; at least, if the sureties should voluntarily sign such a bond, we know of no authority to pronounce it illegal; and if a new bond, with such stipulations, would be obligatory, we see no reason why their voluntary signatures to the old bond, which would only incur the same responsibilities, should not be obligatory. It would doubtless be good as a common law bond according to the principles settled by this court in *Commonwealth vs. Teal et al.* (14 *B. Mon.*); but as this is a statutory and not a common law proceeding, an affirmance would be the result if this bond imposes on these sureties common law liabilities only; but we are of opinion it was fully within the legal power of the county court, as often as it deemed proper, and might regard the previous sureties insufficient, to rule the sheriff to the giving additional sureties, and that their signatures to the same or a new

bond would make it, as to them, an official bond; and that the court erred in dismissing the proceedings as to George C. Adams and Joseph Elston; and as to them the judgment is reversed, with directions for further proceedings consistent with this opinion.