## JOHN W. THOMAS vs. ALPHEUS P. BLAKE.

Norfolk.   Jan. 23, 1878.—Feb. 28, 1879.   LORD & SOULE, JJ., absent.

A bond given by a deputy sheriff to a sheriff recited the appointment of the former by the latter, but did not state the time of appointment or term of office. The condition of the bond was, that, if the deputy shall faithfully perform the duties of his office, and save the sheriff harmless from all judgments, costs and expenses which may at any time happen to him, or to which he may be sub-jected in any manner in consequence of said appointment, the bond was to be void; otherwise, to remain in force.   Prior to the execution of the bond, the deputy attached property on a writ and sold it, under the Gen. Sts. c. 123, § 72. The case was settled before entry, and the writ was not returned to court.   The deputy refused, on demand, to deliver the proceeds of the property sold.   After the execution of the bond, the owner of the property sold sued the sheriff for the default of his deputy, and recovered judgment against him, which was paid.   *Held*, that an action by the sheriff against a surety on the bond could not be maintained.

CONTRACT upon a bond, dated April 13, 1874, executed to the plaintiff by Henry A. Darling, as principal, in the sum of $5000, and by the defendant and others as sureties, in the sum of $500 each, and containing the following condition:

" The condition of this obligation is such, that whereas the said John W. Thomas, who is sheriff for said county of Norfolk, hath made, constituted and appointed the above-named Henry A. Darling a deputy sheriff under him the said John W. Thomas, sheriff as aforesaid; now, if the above-named Henry A. Darling shall well, punctually and faithfully discharge and perform all the services and duties incumbent on him as a deputy sheriff, as aforesaid, and shall save said John W. Thomas, his heirs, execu-tors and administrators, and each and every of them, harmless and fully indemnified from all judgments, damages, costs, trouble, labor, expenses and disbursements of every kind which may at any time arise, happen or accrue to him, them or either of them, or which he, they or either of them may make, sustain or be subjected to in any manner by means or in consequence of the appointment of the said Henry A. Darling by the said John W. Thomas to the office of deputy sheriff aforesaid, then this obli-gation is to be void and of no effect; otherwise, to be and re-main in full force, power and virtue."

At the trial in the Superior Court, before *Bacon*, J., the jury

returned a verdict for the plaintiff; and the defendant alleged exceptions, the substance of which appears in the opinion.

*E. Avery & W. H. H. Andrews,* for the defendant.

*F. D. Ely,* (*C. A. Mackintosh* with him,) for the plaintiff.

COLT, J. The bond was delivered to the plaintiff in May 1874; it recites that Darling had been appointed a deputy under the plaintiff; but neither the date of the appointment nor the term of office is stated, nor does it appear from the bond that Darling had, at the time it was executed, delivered and accepted, been qualified and entered upon the duties of the office.

At the trial there was evidence that Darling, in January 1874, attached personal property belonging to Benjamin Gray, on a writ in favor of Lydia M. Runey, which in the same month he sold on the writ, under the provisions of the Gen. Sts. c. 123, § 72, requiring him to hold the proceeds of the sale subject to the attachment, to be disposed of as the property would have been disposed of if unsold. There was evidence tending to show that the parties settled the case some time in February, or at least before the first Tuesday in April following, when the writ was returnable. The action was never entered in court, and Darling never completed his return on the writ. This in itself was a dissolution of the attachment. Before the execu tion and delivery of the bond, Gray many times demanded of Darling the money received from the sale of his property, one such demand being made as late as April 20, 1874. These demands, Darling, without excuse, failed to comply with, although, upon the dissolution of the attachment, it was the officer's duty to return the money to the defendant in the writ. The plaintiff was notified of the default of his deputy; and a suit thereon was brought against him in July 1874, upon which a judgment in Gray's favor was recovered in the early part of 1876, and paid on execution soon after.

The question is, whether the facts which this evidence tends to establish show any misconduct or default in Darling, for which the defendant is liable on this bond. And that depends upon the construction which must be given to the bond in suit.

In ascertaining the liability of sureties for the misconduct of their principals, it is sometimes said that the contract must receive a strict interpretation; *Miller* v. *Stewart,* 9 Wheat. 680,

703; and that sureties cannot be held for the previous defalcations of their principals, unless that responsibility is clearly expressed in the bond, or, as was said in *Farrar* v. *United States*, 5 Pet. 373, 389, "If intended to cover past dereliction, the bond should have been made retrospective in its language."

But whether sureties are entitled to any more favorable rule of interpretation than parties to all other contracts, there is nothing in the language of this contract which can be fairly construed to charge the defendant with any liability except such as might arise from the future acts of the deputy. It does not appear from anything in the bond itself that Darling had at that time transacted any business under the appointment referred to, nor was it shown that the sureties had knowledge from other sources that he had begun to act under it. The bond is in a form which the sheriff might properly have required when the deputy was first appointed. The words of the condition imply that it was intended to secure future good conduct only; they require that the deputy shall faithfully perform his duties, and shall save the plaintiff harmless from claims against him in consequence of his appointment to the office of deputy sheriff. We refer to several cases in which this construction has been given to bonds in which similar language is used.

In *Farrar* v. *United States*, above cited, the bond recited that the President had appointed one Rector surveyor of public lands, and was conditioned to secure the faithful discharge of the duties of his office. It was said, that, for any sums received by Rector prior to the execution of the bond, the sureties could be held answerable only on the ground that at the time the bond was given the surveyor still held the money in bank or otherwise. If still in his hands, he was bailee to the government. If he had parted with it, he had become a debtor or defaulter to the government, and his offence was already consummated, and the sureties had not undertaken for his past misconduct. See also *Rochester* v. *Randall*, 105 Mass. 295, 297; *Franklin Bank* v. *Cooper*, 36 Maine, 179, 192.

In *United States* v. *Boyd*, 15 Pet. 187, and 5 How. 29, the bond recited that Boyd had been appointed receiver of public moneys for the term of four years from a date which was some six months prior to the giving of the bond. It was conditioned

to be void if Boyd should faithfully perform the duties of his office. And it was held that the sureties were not responsible for defalcations between the date of the appointment and the date of the bond.

In *United States* v. *Linn*, 1 How. 104, a bond, dated in August 1836, recited that Linn had been appointed receiver for a term of four years, by commission dated in February 1835, and was conditioned to be void if Linn should faithfully discharge the duties of his office. It was alleged in one of the counts, that Linn received moneys within the four years' term of his office, which he failed to pay over when requested. It was held that the count was bad, without a direct allegation that the money was received by him after, or was in his hands at, the date of the bond.

In *Bruce* v. *United States*, 17 How. 437, Bruce was appointed an Indian agent in 1840, and reappointed in 1844, and, on each occasion, gave bond with sureties for the faithful performance of the duties of his office. At the trial of an action on the second bond, it was ruled that "if, when Bruce was reappointed agent in 1844, he had moneys in his hands of the United States which he received as agent under his previous commission, then he was bound to apply and account for such moneys under the second commission, and his sureties are bound under the bond which is sued on; but if Bruce had appropriated the moneys received under the previous commission to his own use when this bond was given, then the first set of sureties are responsible for the moneys thus illegally appropriated, and these defendants are not liable, and the burden of proof is on the defendants to show that Bruce had illegally appropriated the moneys before the bond sued on was given." And this ruling was approved by the Supreme Court.

In the case at bar the jury would be justified in finding, upon all the evidence, that Darling, by refusing to pay over the money to the party entitled to it, had fully converted the proceeds of the sale on the writ to his own use before the bond was executed; for any such conversion his sureties would not be liable.

The subsequent recovery of judgment against the sheriff for this misconduct is not a breach of the bond. The condition to save harmless from all judgments which may at any time be

recovered in consequence of Darling's appointment to the office of deputy sheriff plainly means judgments recovered for acts of misconduct which may occur after the execution of the bond, and against which it was the intention of the bond to protect the plaintiff. If it was intended to include judgments recovered upon past transactions, a surety has the right to insist that such intention should clearly appear. The words of the condition are fully satisfied by the construction we give to it.

In the last request for instructions, the defendants asked the court to rule, in substance, that the defendant would not be liable, if the conversion of the proceeds of the sale by Darling was before the bond was executed. The court erroneously declined to give this instruction.　　　　　*Exceptions sustained.*