HALEY, CORONER, V. PETTY ET AL.

1. COLLECTOR OF REVENUE: *For what revenue he and his sureties bound.*
The collector of revenue and his sureties are bound on their bond for revenue collected in the preceding term, and in his hands at the time of the execution of the bond; but the sureties are not bound for revenues misapplied or squandered by him before the execution of the bond.

2. SAME: *Duration of his term.*
The term of a collector of revenue continues until his successor is elected and qualified; and revenue collected up to the qualification of his successor, is collected during his term.

3. DISTRESS WARRANT: *When and for what to be issued.*
A distress warrant can be issued by the Auditor only for the balance found due from the collector upon the annual settlement required to be made with the Auditor, after the settlement made with the clerk after the tax sales; and it should be issued promptly and immediately in the time required by the statute.  The Auditor can not, as a general rule, delay, and issue it afterwards at some indefinite time, at his option.

APPEAL from *White* Circuit Court, in Chancery.

Hon. J. W. MARTIN, Judge, on exchange of circuits.

*C. B. Moore*, Attorney General, for appellant.

The authority for issuing the distress warrant, and the proceedings under it, are found in sections 5247–5254 Gantt's Digest. No time is limited for its service and return, but, *quere*, is it to be regarded and treated as an execution?

As to the liability of the sureties, see *Goree v. State, 22 Ark., 236.*

The condition of the bond is sufficiently broad to cover his liabilities and that of his sureties, for all revenue that might come into his hands *during 1878*, whether of the revenue of 1877 or 1878.

*W. R. Coody* and *J. W. House* for appellees.

Petty was not *ex officio* collector (*Acts 1875, p. 225*), and the bond given by him as such, on the thirty-first day of January, 1878, was a nullity, at least, as a statutory bond; because there was no law authorizing the execution of such a bond at the time it was executed. *10 Ark., 89; 23 Ib., 278; 35 Ib., 327.*

No distress warrant could issue for any alleged deficit in the revenue of 1878, until the taxes for that year had been collected, and the time expired for the collector to make settlement, June 30, 1879. See *17 Ark., 440; 21 Ib., 426; Ib., 475; 22 Ib., 595; 23 Ib., 107; 35 Ib., 95.*

The sureties were not liable for licenses collected before the execution of the bond, nor after the expiration of the collector's term of office. *Brandt on Suretyship and Guaranty, secs. 450, 451, 460, etc., and notes.*

The sureties on this bond not liable for moneys collected on account of whisky license. *Miller's Digest, secs. 185, 186, 187, 188, 189, 203, 202, 201 and 208*, etc.

The distress warrant, at the time of the levy, was defunct, having been issued and placed in the hands of the coroner more than eighteen months before; for it is nothing but an execution, and is inoperative after sixty days. *Gantt's Dig.*, secs. *5247 and 5248 ; Miller's Dig., sec. 189.*

The bondsmen could not be held for the revenue of 1877, and the Auditor exceeded his authority in issuing the distress warrant directing the coroner to distrain, etc., for the revenue collected or which *should have been collected* · during the years 1877 and 1878. *24 Ark., 142 ; 29 Ark., 173 ; Brandt on Surety, etc., sec. 138-9-40-41 ; 37 Am. Rep., 449; 10 Am. Dec., 644; 14 Ib., 259; The Reporter, July 27, 1881, 111.* The sureties on a *collector's* bond can not be held liable for the default of the sheriff. *4 Greene (Me.), 72.*

Petty's accounts had never been adjusted by the county court, and the Auditor had no right to adjust the matter of whisky licenses. *35 Ark., 555, etc.*

EAKIN, J. Petty, sheriff of White County, failed to execute his bond as collector, before the first Monday in January, 1878, whereby the office of collector, which *ex officio* pertained to him as sheriff, became vacant. Afterwards he was appointed collector by the Governor, and on the thirty-first of January, 1878, executed his bond with all the other appellees as sureties. It is in the sum of $75,000. It recites that Petty "has heretofore been duly elected and commissioned as sheriff, etc., and is, by virtue of his office, *ex officio* collector of the revenue, etc., for the time prescribed by law ; and is conditioned that he shall faithfully perform the duties of collector of the revenue for the county aforesaid, for the year 1878, and well and

truly pay over any moneys collected by him, by virtue of his said office."

On the seventeenth of December, 1878, the Auditor of the State issued to the coroner of White County, a distress warrant against Petty and his sureties, reciting that, upon an adjustment of Petty's accounts, it had been found that he was due for revenue which had or should have been collected for the years 1877 and 1878, the sum of $2,332.35, including commissions forfeited, and the penalty of 25 per cent. on the amount due and unpaid at the time fixed by law. It further recited that a part of this sum, to wit, $1,630.95, bore interest at the rate of 5 per cent. per month, from the first day of July, 1878.

From indorsements on the back and margin of the distress warrant, it appears that this sum is made up of the following items:

| | | |
|---|---:|---:|
| Balance due on liquor licenses | $1,900 | 00 |
| Penalty of 25 per cent. on $1,600 of that amount which was due June 30, 1878 | 400 | 00 |
| On estrays | 30 | 95 |
| Forfeited commissions on estrays | 1 | 40 |
| | $2,332 | 35 |

The warrant remained in the hands of the coroner until the ninth day of July, 1880, when it was levied upon some real estate of one of the sureties. Whereupon they all, with the principal, made this application to the White County Circuit Court. The nature of the suit is not well defined. They pray for a writ of *certiorari* and supersedeas to quash the warrant, but none was issued. But they pray for general relief, also, and such proceedings were had as would be proper in a bill to enjoin the execution of the warrant upon the ground that it would cloud the title to real estate, and otherwise produce inconveniences not

easily remediable at law.   The Auditor is not made a
party, and the proceedings being merely against the coro-
ner of White County, in the White Circuit Court, the suit
can only be supported as a bill for an injunction.   As such
it will be treated.   After an interlocutory injunction the
defendant, Haley, appeared and rested the case upon de-
murrer.

The points of law are all made upon matters set forth in
the complaint with its exhibits.   The court made the
injunction perpetual, and Haley appeals.

1. For what revenues collector and sureties liable.

Petty was not *ex officio* collector.   He had held the office
in that character as connected with his office of sheriff,
and might have retained it if he had filed his bond in time.
But he lost the office by failure to file his bond before the
first Monday in January, 1878.   (*Act of March 5, 1875 ;
sec. 12, Pamph. Acts of 1874-5, p. 225.*)   Upon being noti-
fied of that, it became the duty of the Governor to appoint
a " competent person " to perform the duties of collector.
He might have appointed any one having the requisite
qualifications.   The bond given by such appointee would
not relate to any act which had been done by the sheriff
as *ex officio* collector of the previous year, but would only
cover the official acts of the appointee during his own
term.   That is all the sureties can be supposed to have
contemplated.   It can make no difference that the sheriff
and former *ex officio* collector is the same person with the
special collector appointed by the Governor.   The bond
appertains to his new character of special collector, and
covers only such funds as may be considered to have come
into his hands as such.

It appears from the pleadings that $1,200 of the liquor
licences were collected by Petty as *ex officio* collector from
the fourth of September, 1877, to the sixth of January,
1878, all before he entered upon the duties of special col-

lector. The first question is, had the Auditor authority to include this amount in a distress warrant based upon the new bond, with so much also of the twenty-five per cent. penalty as resulted from the failure to pay these collections over?

Although in 1878 Petty held the office of collector by appointment, and not *ex officio*, yet he had been collector, at that time, for the previous year, without any settlement that appears, for the amounts which had come into his hands. He was his own successor in fact, holding the same office continuously, with a small abeyance between the time of his failure to execute a bond on the first Monday in January, and the execution of the bond now in judgment, on the thirty-first of that month. If at that date he had in hand, or may be presumed to have had, the funds formerly received by himself as collector, it would have been his duty to have continued to hold them as such, and to pay them over, when required, to the State, and the new bond would cover that obligation as effectually as if some one else had been appointed and had received the fund. He would in effect have *received* them in his new term. He and his sureties contracted under penalty, that he would " faithfully perform the duties of collector of the revenue for the county aforesaid for the year 1878, and shall well and truly pay over all moneys collected by him by virtue of his said office." There is no difference in principle between money originally collected by an officer and money paid into his hands by his predecessor. This court has so held with regard to an officer's right to commissions. *Lawrence County v. Hudson, 41 Ark.*

It is quite as plain, upon the other hand, that if Petty had before the execution of the bond of 1878 misappropriated, squandered or otherwise converted the liquor

license fees collected in 1877, the former securities would be liable, and in no sense could it be said that he had received the funds in such manner as to make the second sureties accountable for failure to pay it over. What the exact facts are we can not fully gather from the present record. It does not disclose whether or not there has ever been any settlement with the county court at its quarterly meetings, or any ascertainment there of the amounts due the State to be certified to the Auditor, or when it was the duty of the collector to have paid them in. These things depended on the action of the county court. In the absence of this information, and as the warrant with regard to these first licences may entirely consist with the supposition that the collector had these funds, unconverted, in his hands on the thirty-first of January, 1878, we can not say that a distress warrant issued for failure to pay them over after the annual settlement in June, was improperly issued against the new sureties. We consequently decide nothing as to the facts, leaving them to be decided in some proper contest between the two bodies of sureties, if such should ever be made. Waiving that, we only say that in this case now in judgment and upon this transcript, we can not pronounce the distress warrant void on this ground. Equities between different and successive bodies of sureties are complicated, delicate, and not always easily discernible upon a casual glance.

2 Duration of collector's term. It is objected that the distress warrant includes sums collected for licences after the term of office had expired. This is a mistake of counsel. The collector appointed held his office until his successor should be elected and qualified. *Pamph. Acts of 1874–5, p. 165.*

Upon another ground, however, it must be seriously considered whether the inclusion of these last named amounts can be permitted.

Haley, Coroner, v. Petty et al.

The authority to issue a distress warrant is special, and rests upon peculiar grounds. <span style="float:right">3. Distress warrant: When and for what to issue.</span>

It does not exist at common law, and could only be conferred by statute, upon the high grounds of absolute political necessity. It is essential to the Government, and therefore within the power of the Legislature, but it is dangerous and exceptional, and therefore must be strictly confined to the conditions and modes prescribed for its exercise.

This court, in *Crawford v. Carson*, had occasion to remark that there was no express provision of law authorizing the Auditor to issue distress warrants for the sums found to be due the State for liquor licenses, on the quarterly settlements with the county court. It was intimated also in that case, and shown by reference to and analysis of the different sections of the revenue act of 1873, that the provisions of the section authorizing a distress warrant applied only to balances appearing due to the State upon the annual settlement required to be made with the Auditor, after the settlement made with the clerk after the tax sales. Although the distress warrant might then cover all sums from any source appearing officially due to the State from the officers, embracing liquor licenses before that time, and then ascertained and adjusted in the statutory mode. The conclusion was not there formally announced, as it was not necessary; but it nevertheless follows that the Auditor can not, at his option, and at any time, collect from an officer and his sureties by distress warrant, balances due the State as they accrue and are ascertained.

Distress warrants must be rigidly confined within the statutory powers. They were sometimes of very doubtful validity even under the clearest and most direct legislative provisions. It has been settled that they may be sustained *ex necessitate*, but there are none of the ordinary

intendments used in remedial statutes which can be invoked to sustain them in their application beyond the express terms of the statute, to the full reach of its reason and design. Not only must the bond be in accordance with the statute (for if it be merely good at common law it will not suffice), but all the statutory conditions must exist. "The steps leading to it must all have been taken." "If it is issued under any other circumstances than those under which the statute gives it, the officer issuing it will be a trespasser." "The liability is *strictissimi juris,* and can not be extended a *single step* beyond the statutory permission." These expressions are quoted from page 506 of Judge Cooley's work on Taxation.

The annual settlement in this case appears to have been made before the first of July, 1878, or about that time. For all balances then appearing due from the collector, and unpaid, a distress warrant might well have issued in fifteen days, according to law, and the express consent of the principal and sureties in the bond.

This court held also, under the peculiar circumstances of *Crawford, Auditor, v. Carson (supra),* that a delay beyond fifteen days did not vitiate the warrant. It is not to be taken as a general rule, however, that the Auditor may in all cases delay the issue of the distress warrant, and issue it afterwards, at some indefinite time, at his option. The statute requires prompt and immediate action, and distress warrants are, of all things, most dependent for vitality on statutory permission, and owe their existence to absolute conformity with statutory conditions.

Waiving the matter of delay, it yet appears that when the warrant was issued, on the seventeenth of December, 1878, it included not only the balance on liquor licenses found to be due on the thirtieth of June, and the penalty for their non-payment, but several hundred dollars more

for liquor licenses collected since the time of the settlement, for which no penalty was claimed. The statute does not authorize this use of a distress warrant. It was void.

Moreover, the warrant directed to the coroner slept in his hands, without any action upon it whatever, as shown by any return, until this bill was presented for an interlocutory injunction, on the fifteenth of July, 1880—more than a year and a half. It is alleged that the coroner had then recently levied it upon the real property of one of the defendants, and would proceed in the same way with regard to the others.

No time is prescribed for the return of a distress warrant. It is not clear that they must be governed, in this respect, by the law regulating executions. Yet it is quite clear that such use of a distress warrant is wholly foreign to the objects and purpose which have enabled them to exist, against the constitutional inhibitions which would otherwise avoid them wholly. Those objects and purposes being the *speedy* collection of the revenue without the delays incident to " due process of law."

Although the grounds upon which the decree below was based, may have, in some respects, been mistaken, yet the decree itself is correct. The distress warrant would, if executed, have made a cloud upon the title of complainant's real property, and it was properly enjoined.

None of the proper rights of the State are affected by the decree.

Affirm.