UNITED STATES FIDELITY & GUARANTY COMPANY *v.* FULTZ.

Opinion delivered July 29, 1905.

1. INSURANCE—WHEN LIABILITY ON BOND ACCRUES.—In an action on a bond executed to the State, under section 4124 of Sandels & Hill's Digest, by a fire insurance company, "conditioned for the prompt payment of all claims arising and accruing to any person during the term of said bond by virtue of any policy issued" by the company, the liability of the sureties is fixed when the loss by fire occurs, and not from the date when the amount becomes payable. (Page 413.)

2. SAME—WHEN BOND RETROACTIVE.—In view of the statutory requirement that insurance companies execute annually a bond to secure the payment of all claims against them (Sandels & Hill's Digest, § 4124), a bond for the payment of all claims arising and accruing for a period of one year, beginning March 1, 1900, and ending March 1, 1901, although it was not approved by the Auditor, and did not become effective, until March 16, 1900, will cover a claim arising and accruing between March 1 and March 16, 1900. (Page 415.)

Appeal from Ouachita Circuit Court.

CHARLES W. SMITH, Judge.

Affirmed.

STATEMENT BY THE COURT.

Appellee, D. W. Fultz, recovered a judgment for $2,500 in the Circuit Court of Ouachita County against the Minneapolis Fire & Marine Insurance Company on a policy of insurance to him upon his property which was destroyed by fire, and on appeal to this court the judgment was affirmed. 72 Ark. 365. Pending the appeal to this court, appellee brought this suit against said insurance company and the appellants herein as sureties on a bond executed to the State of Arkansas, as required by statute, conditioned for the payment of all claims arising and accruing to persons by virtue of policies of insurance issued by said insurance company.

The bond sued on is in the following form, towit:

"Know all men by these presents: That we, the Minneapolic Fire & Marine Mutual Insurance Company of Minneapolis, Minn., as principal, and the United States Fidelity & Guaranty Company, a corporation created and existing under

the laws of Maryland, and Sam W. Reyburn and W. B. Scull, of Little Rock, as sureties, are held and firmly bound unto the State of Arkansas in the sum of twenty thousand dollars, lawful money of the United States; for the payment of which well and truly to be made we hereby bind ourselves, our executors, administrators and assigns, jointly, severally and firmly by these presents.

"Witness our hands and seal this 1st day of March, 1900.

"The conditions of the above obligation are such that:

"Whereas, The said Minneapolis Fire & Marine Mutual Insurance Company has filed its charter and statement, and in other respects conformed to the statutes in such cases made and provided, and

"Whereas, the said company proposes to enter this State (or continue in this State) for the purpose of transacting the business of fire insurance for the period of one year ending March 1, 1901.

"Now, therefore, if the said Minneapolis Fire & Marine Mutual Insurance Company shall promptly pay all claims arising and accruing to any person or persons during said term of one year by virtue of any policy issued by the said company upon the life or person of any citizen of the State of Arkansas, or upon any property situated in the State of Arkansas, when the same shall become due, and shall faithfully comply with and perform all and singular the duties and obligations imposed upon them by reason of an act of the General Assembly of the State of Arkansas, approved March 6, 1899, entitled, 'An Act for the punishment of pools, trusts, and conspiracies to control prices,' and shall pay to the State of Arkansas all such sums of money as shall be adjudged against them for the violation of any of the provisions of said act,' then this obligation shall be void; otherwise to remain in full force and effect."

The bond is shown to have been delivered to the Auditor of State on March 16, 1900, and on that day approved by him and filed in his office.

This insurance company had been doing business in the State during the year previous, and had filed with the Auditor a bond in similar form, with other parties as sureties, dated

May 16, 1899, conditioned for the payment of all claims arising and accruing during one year ending May 16, 1900.

The plaintiff's property insured under the policy was destroyed by fire on March 2, 1900; and the policy contained a clause providing that the amount of loss proved thereunder should be payable 60 days after receipt of proof of loss.

*Cantrell & Loughborough,* for appellants.

Appellee has sued upon the wrong bond, because:

(1) The bond sued upon was not in force at the date when the plaintiffs' claim arose. The date in the bond does not necessarily control in such a case. Devlin, Deeds, § 182; Brandt, Sur. & Guar. § § 25, 27; Throop, Public Officers, § 183. The date of delivery and acceptance controls, and the bond takes effect only from that date. Brandt, Sur. & Guar., § § 93, 526; Throop on Public Officers, § 204; 19 How. 73; 79 Cal. 84; 9 Daly (N. Y.), 398; 114 N. Y. 197; 42 Hun, 646; 19 Md. 309; Gilp. (U. S.) 106; 42 Ark. 392; 22 Iowa, 360; 53 Me. 252; 25 Mich. 36; 14 Lea (Tenn.), 1; 81 N. Y. 592; 65 N. C. 409; 11 Gill & Johns. (Md.). 309; 24 Ark. 244.

(2) The bond is not retrospective. Throop, Public Officers, § 204; Brandt, Sur. & Guar. § § 93, 526; 195 Ill. 445; 41 Mich. 225; 5 Pet. 373; 15 Pet. 187; 126 Mass. 320; 89 Mo. 470; 19 How. 73; 166 U. S. 572; 27 Am. & Eng. Enc. Law, 442; 56 Miss. 648: 79 Cal. 84. This is shown by the language of the bond, which plainly relates to the future. 3 Cranch, 399; 15 Pet. 187, 206; 5 Rose's Notes, 106; 91 Tex. 113, 121; 42 Hun, 646; 2 McLean, 405; 9 Daly, 398; 114 N. Y. 119. As to when plaintiffs' cause of action accrued, see: Century Dict. *verbo* "accrue"; 10 Wis. 433-5; Bouvier, L. Dict. *verbo* "accrue"; Anderson's L. Dict. *Id;* 59 Hun, 145; 52 C. C. A. 663. The liability of a surety will not be extended by implication. Brandt, Sur. & Guar. § 106; 7 Wheat. 680; 163 Ill. 467; Mech. Pub. Off. § 282. The new bond did not take effect until May 16, 1900. Brandt, Sur. & Guar. § 617; 107 Mich. 151; 24 Fed. Cas. 1250; 80 Me. 362; 4 Hen. & M. (Va.) 208; Mechem, Public Officers, § 268; Throop, Public Officers, § 207; 62 Ark. 135.

*Gaughan & Sifford* and *Smead & Powell,* for appellee.

The bond plainly makes appellant liable as surety during the year ending March 1, 1901. A bond is construed like any other

written contract, and appellant must be held to the plain meaning of its undertaking. 51 Ark. 205; 71 Ark. 185; 91 U. S. 50; 56 L. R. A. 926. An instrument is presumed to have been signed on the day when it bears date. Reynolds, Stephens, Ev. c. 2, art. 85; 10 Gray, 66, 68; 5 Denio, 290, 293; 2 Whart. Ev. § § 977, 988, 1312. The bond was retrospective. 11 S. W. 995; 23 Mo. App. 293; 34 Fed. 202, 19 How. 73; 13 Mass. 177; 97 Mass. 533.

McCULLOCH, J., (after stating the facts.) It is contended by appellants that they are not liable, for the reason that the bond was not in force when the fire occurred. This is the sole question presented by the appeal.

The statute on the subject which was in force when the bond was executed is found in Sandels & Hill's Digest (having since been amended), and is as follows:

"Section 4124. All fire, life and accident insurance companies now or hereafter doing business in this State shall, in addition to the duties and requirements now prescribed by law, annually give a bond to the State of Arkansas, with not less than three good and sufficient sureties, to be approved by the Auditor of the State, in the sum of twenty thousand dollars, conditioned for the prompt payment of all claims arising and accruing to any person during the term of said bond by virtue of any policy issued by any such company, individual or corporation upon the life or person of any citizen of the State or upon any property situated in this State, and such bond shall be annually renewed."

"Section 4127. Any insurance company failing to comply with the provisions of this act shall not be entitled to transact any business in this State; and any such company or any person acting for such company who shall attempt to transact any business in this State until the provisions of this act shall be complied with shall be guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than twenty nor more than one hundred dollars."

"Section 4130. When any insurance company shall have complied with all the provisions of this chapter, it shall be the duty of the Auditor of State to issue to said company a certificate to that effect, which shall entitle it to do business in this State," etc.

The question first presented is, when did the claim arise and accrue, within the meaning of the statute and terms of the bond, so as to create liability on the part of sureties on the bond of the company? Did that contingency occur when the property was destroyed, or when the amount of the loss became payable according to the terms of the policy?

A consideration of the language of the statute leads to the conclusion that the liability of the sureties is fixed when the loss by fire occurs, and not from the date when the amount becomes payable. The happening of that contingency fixes the liability of the principal in the bond upon its policy, and nothing remains to be done but to ascertain and adjust the amount of the loss. The liability is fixed when the loss occurs, though payment does not become due until sixty days later. It follows that the liability of the sureties becomes fixed with that of the principal, and ripens into a mature cause of action when default is made by the principal in the payment according to the terms of the policy. This is the conclusion reached by the United States Circuit of Appeals for the Eighth Circuit, in the case of *Union Cent. Life Ins. Co.* v. *Skipper,* 115 Fed. 69, in construing this statute and a bond executed in compliance therewith. Judge Thayer, speaking for the court, said: "We may either assume that the word 'and' is used in the statute as it frequently is, in a disjunctive sense, and that the Legislature intended to make the obligors in such bonds as the one sued upon liable for any loss where either the death occurs, or the loss becomes payable by the terms of the policy, during the lifetime of the bond. Or we may assume that the words 'arising and accruing' mean the same thing; one word being used as explanatory of the other; the intent being to say that the obligors in such bonds shall be liable to pay all losses that 'arise or accrue' by reason of deaths which occur during the period covered by the bond. We incline to the opinion that the latter is the correct interpretation of the statute, *and that the time when the death occurs fixes the liability on this class of bonds."*

Was the bond in force on March 2, 1900, the date of the fire? We hold that it was in force on that day.

The bond did not become effective until presented to and approved by the Auditor, and it is undoubtedly the law, as con-

tended by learned counsel for appellants, that the contract of a surety is to be given no retroactive effect, so as to cover past delinquencies, unless it in express terms provides that it shall have that effect. Throop on Public Officers, § 204; 2 Brandt on Sur. & Guar. § 525; *Bartlett* v. *Wheeler*, 195 Ill. 445; *Hyatt* v. *Sewing Mach. Co.*, 41 Mich. 225; *Farrar* v. *U. S.*, 5 Peters, 373; *Thomas* v. *Blake*, 126 Mass. 320.

But this bond by its express terms provides for the liability of the contracting sureties for all claims arising for a period of one year beginning on the date of the bond, March 1, 1900, and ending on March 1, 1901.

The bond was executed pursuant to the requirement of the statute, and the obligors are presumed to have known the terms of the statute, and to have bound themselves with reference thereto. The statute provides that insurance companies doing busines in the State shall annually give such bond, and that the same shall be annually renewed. The statute contains no provision for a bond for a shorter period than one year, and in conformity with this provision the bond in question, by its express terms, was to run for one year from March 1, 1900, the date of its execution.

Then, if this bond is to be given full effect according to its express terms and the provisions of the statute, when did the year of its life begin to run? Obviously, not from March 16, 1900, for that would carry it beyond the date of expiration expressly named in the face of the bond. Suppose the loss under the policy had occurred on March 2, 1901, could it be seriously contended that the sureties on the bond would be liable?

The liability of these sureties is not affected by the fact that the company had previously given a bond dated May 16, 1899, which ran for one year from that date. Under the statute the Auditor may require a new bond, and there is no reason why the company may not substitute a new bond or supplement the old by an additional bond. It may be that in this case both bonds were liable for the loss. We do not decide that question, but we do hold that these sureties are liable on their bond.

In determining whether contracts of this kind are to be given a retroactive effect, the peculiar language of each instrument is controlling, but authorities are not lacking to sustain the con-

clusion we have reached that the language of this bond is sufficient to warrant that interpretation.

In *McMullen* v. *Winfield B. & L. Association,* 64 Kan. 298, McMullen was secretary of a building and loan association for eleven years, being elected annually for a term running from the first day of January. On January 13, 1885, he was re-elected for the year 1885, and on February 2, 1885, gave bond for his faithful performance of the duties of his office "for the year beginning January 1, 1885, and ending December 31, 1885." The court held that the language gave the bond a retroactive effect, and that the sureties were liable for default occurring in 1885, prior to the date of the bond. The court said:

"It may be assumed that, in the absence of a provision to the contrary, a bond can only be regarded as prospective and to cover only future transactions; but if the language used is retrospective, and clearly shows an intent to include defaults occurring before the execution of the instrument, the sureties will be held liable. * * * The fact that the election occurred after the first of the year and term is not controlling, but the real question is, what time was intended to be covered by the bond? And that must be determined from its terms. The language is plain, and manifestly the parties contemplated that the bond should be retrospective in its operation, and should indemnify against defaults occurring from the first to the last of the year. When it appears that a bond is intended to be retrospective as well as prospective, such effect must be given to it." See also *State* v. *Finn,* 98 Mo. 532; *Hatch* v. *Attleborough,* 97 Mass. 533; *Commonwealth* v. *Adams,* 3 Bush (Ky.), 41; *United States* v. *Ellis,* 4 Sawyer (U. S.), 591.

In *Hatch* v. *Attleborough, supra,* the Supreme Court of Massachusetts held (quoting the syllabus of that case) that "the obligors upon the bond of a town treasurer executed after the beginning of his official term, which, after reciting the period of such term, is on condition that he shall faithfully account for and pay over all moneys by him received, are liable thereon for moneys received by him during such term prior to as well as after the execution and acceptance of the bond."

Counsel for appellant have cited some authorities tending to sustain the contrary view, that language similar in some re-

spects to that employed in this bond is not sufficient to justify a retroactive effect to the obligation, but we entertain no doubt that the conclusion we have reached, and the cases herein cited, are supported by sound reason, and are right.

This conclusion does not conflict with the decision of this court in *Haley* v. *Petty,* 42 Ark. 392. In that case Petty was sheriff and *ex officio* collector of the county, but forfeited the office of collector by failure to give bond within the time prescribed by law. He was appointed collector by the Governor on January 31, 1878, and gave bond as such to faithfully perform his duties for the year 1878. The court held that the sureties on his bond were not liable for delinquencies occurring before his appointment and the execution of the bond, for the reason that such delinquencies occurred while the principal was holding a separate and distinct office, that of sheriff and *ex-officio* collector. There is no analogy between the two cases. There the sureties on the bond as collector could not be held liable for defaults of the principal done prior to the execution of the bond while he was holding another office, any more than if the defaults had been previously committed by another individual holding the same office. Here the insurance company was already doing business in the State, and the sureties signed a bond dated March 1, 1900, expressly obligating themselves to stand surety for all claims arising for a period of one year from that date. They are liable under the policy and bond for the loss of appellee's property, and the circuit court was correct in so holding. Affirmed.

BATTLE, J., absent.