The Galveston, Harrisburg & San Antonio Railway Company
v. Jose Arispe et ux.

No. 78.

1. **Negligence — Fellow Servants — Pleading.** —The negligence of a division superintendent and train dispatcher of a railway company in sending conflicting telegrams to two trains, which resulted in a collision, in which a laborer in the employ of the company was killed, in an action by the parents of the deceased for damages, *Held,* that his death was not caused by the negligence of a fellow servant, but by that of the superintendent, who was the representa-

tive of the company, whose negligence was that of the company, and an allegation that the death was caused by the negligence of the company, acting through its superintendent, is sufficiently specific.

2. **Secondary Evidence.**—When a document is shown to have been in the possession of a person living, and accessible by process of the court, the affidavit of that person must be obtained that it is lost, before secondary evidence of its contents can be admitted.

3. **Negligence, when a Question of Fact.**—When the question of negligence depended upon the construction to be placed upon certain orders given by the superintendent to the train men of colliding trains, *Held*, that whether these orders constituted negligence or not was a question of fact to be submitted by the court to the jury.

4. **Partnership — Lease.**— Where several railway companies enter into a combination, and place the government of their roads in one company, each company getting the net earnings of its respective line, *Held*, that this was a partnership, and not a lease. Railway v. Davis, 4 Texas Civil Appeals, 468.

5. **Verdict not Excessive.**—See opinion for facts upon which it is held, that the verdict of the jury was not excessive.

### ON REHEARING.

6. **Sufficiency of Evidence.**—The telegrams of the superintendent gave two trains going in opposite directions the right of the track at the same time, whereby a collision occurred. When the case was before the Supreme Court (see Railway v. Arispe, 81 Texas, 517), that court did not pass upon the testimony in this record, and this court must be the judge of the sufficiency of the facts to support the judgment, even if the case had been presented to this court before, and reversed because they were insufficient.

### ON MOTION TO AMEND CONCLUSIONS OF FACT.

7. **Statement of Facts.**—The statute requires Courts of Civil Appeals in certain cases to file conclusions of fact. These are the conclusions drawn by the court from the statement of facts; and if the precedent is laid that a party can have a part of the testimony inserted in full in the record, there could be no valid reason why the whole statement of facts should not be incorporated in the conclusions of fact.

APPEAL from Val Verde. Tried below before Hon. WINCHESTER KELSO.

*Clark, Fuller & Garner* and *Frank M. Spencer*, for appellant.—1. On December 31, 1886, the time the accident occurred, facts which would make appellant liable for the acts of its corporate officers would not make it liable for the acts of its servants or agents, and appellee should have shown whether they relied upon the negligence of the corporate officers or the gross negligence of the servants or agents. Rev. Stats., arts. 2899, 2900; Hendrick v. Walton, 69 Texas, 192; Railway v. Hill, 71 Texas, 456; Winnt v. Railway, 74 Texas, 32; Railway v. Hanks, 78 Texas, 300.

2. The predicate was fully laid for the introduction of secondary evi-

dence.   Coleman v. Smith, 55 Texas, 256; 2 Willson's C. C., sec. 806; 1 W. & W. C. C., sec. 1132.

3. There was no negligence or carelessness of the train dispatcher or his assistant in sending the train orders complained of, and the same were not uncertain or ambiguous.   Railway v. Arispe, 81 Texas, 517; Corona v. Railway, 17 S. W. Rep., 384.

4. A railway company is not liable to employes of its lessee while the road is being operated, managed, and controlled by the lessee.   Railway v. Culberson, 72 Texas, 375.

*Joseph Jones* and *H. C. Carter*, for appellees.—1. The petition clearly alleges the negligent performance of a duty which defendant in person owed all its servants, and directly charges such negligence as defendant's. Railway v. Markey, 19 S. W. Rep., 392; Railway v. Smith, 76 Texas, 611; Railway v. Durham, 49 Texas, 181; Pierce on Rys., 367–369.

2. The book in which the order was written before sending was the original evidence, and is shown to be in the possession of the appellant. Scott & Jarn. Law of Tel., sec. 341; Prather v. Wilkins, 68 Texas, 189; Durkee v. Railway, 29 Vt., 127.

FLY, Associate Justice.—This is a suit for damages arising from the death of Pedro Arispe, the minor son of appellees, alleged to have resulted from the negligence of the superintendent and train dispatcher of appellant in sending orders to two trains, whereby a collision resulted.

We find that the following facts were proved upon the trial of this cause:   That the appellees were the parents of Pedro Arispe, an unmarried minor, 20 years of age; that the father was 64 years old, blind, and unable to work; that the mother was 45 years of age, and in fair health; that the son was healthy and robust; that he was working for appellant for about $30 a month, and was engaged in quarrying rock on the line of defendant's road between Del Rio and Feely; that said son contributed from $15 to $20 per month of his salary to the support of his parents, and had done so for four years before his death; that he was dutiful, hard-working, and industrious; that said Pedro Arispe was killed in a collision between the work train, on which he and other laborers were riding, and a freight train, both belonging to defendant, between Feely Station and Devil's River Station, on defendant's railway, on December 31, 1886; that the collision occurred with freight train number 80; that the freight train and work train were both running under orders from W. G. Van Vleck, who was the division superintendent, and had charge of all the trains; that Van Vleck had sent dispatches to the conductors and engineers of the work train and freight train which gave them both the right of way on a single track at the time of the collision; that said work train was on the track a few miles west of Devil's River, with orders to work

there until 11:30 a. m., regardless of number 80; that the freight train was west bound, and had orders not to cross Devil's River and move westward until 11:30 a. m.; that the trains came together a short distance west of Devil's River, and the boy Pedro, who was riding on the flat car, was killed; that the order to the work train required it to remain at place of work until 11:30 a. m., and then it was necessary to seek the nearest siding, which was Devil's River Station; that under the orders it was the duty of the freight train to remain at Devil's River Station until 11:30, and then to move out; that the two trains collided near a curve shortly after 11:30 a. m.; that the laborers were working at a point five and one-half miles west of Devil's River Station; that the work train had gone east about three and one-half miles when the collision occurred; that the railway of appellant was being operated by the Southern Pacific, under a partnership agreement between appellant and several other railway companies; that all the lines were owned by practically the same parties. The accident arose from the conflict of orders given by the division superintendent.

We are of the opinion that there was no error in the lower court overruling the exceptions to the petition. There was a distinct allegation that the death of the boy was caused through the negligence not of the fellow servants of the deceased, but through that of appellant, acting through its superintendent and train dispatcher. The question of gross negligence could not in any manner figure in the trial of this cause. The allegations in the petition were sufficient. A corporation can not act personally, but must act through agents and servants. It requires some person to superintend the building of structures; to see to the employment and discharge of servants; to provide for the comfort and safety of its passengers, customers, and their property; to regulate and control the moving of trains; to protect the property of the corporation; to use due care in the selection and keeping of machinery and appliances; and to use care and prudence in the protection of the employes of the corporation from danger and injury. This can only be done by its agents. The acts of these superintendents and agents invested with high authority are the acts of the corporation within the scope of the business of the corporation, and while so acting their negligence is the negligence of the corporation. The thought we desire to express is forcibly put in a New York case, and we adopt it.

" When the directors themselves personally act as such agents, they are the executive or master; their acts are the acts of the corporation. When these directors appoint some person other than themselves to superintend and perform all these executive duties for them, then such appointee, equally with themselves, represents the corporation as master in all those respects; and though, in the performance of these executive duties, he may be and is a servant of the corporation, he is not, in those respects, a

coservant, a colaborer, a coemploye, in the common acceptation of those terms, any more than is a director who exercises the same authority. Though such superintendent may also labor like other colaborers, he may be in that respect a colaborer, and his negligence as such a colaborer, when acting as a colaborer, may be likened to that of any other; but when by appointment of the master he exercises the executive duties of master, as in the employment of servants, in selecting for adoption the machinery, apparatus, tools, structures, appliances, and means suitable and proper for the use of other and subordinate agents, then his acts are the acts of a master, and then the corporation is responsible that he shall act with a reasonable degree of care .for the safety, security, and life of other persons in its employ. These executive duties may also be distributed to different heads of different departments, so that each superintendent, within his sphere, may represent the corporation as master in controlling and directing structures, in selecting machinery and tools. He speaks the language of a master; he issues his orders to his operatives; he is the mouthpiece and interpreter of his master's will.'' Brickner v. Railway, 2 Lans. .(N. Y.), 507.

The negligence of the division superintendent in sending conflicting telegrams to the two trains, directly and completely under his control and management by virtue of the office he held, was the negligence of the corporation, as much so as though the owners or directors had sent the messages. Railway v. Geiger, 79 Texas, 13. We hold that Van Vleck was not the fellow servant of deceased, and the orders emanated from him. This view of the case disposes of the first two assignments of error. The allegation is sufficiently specific, that the accident occurred by reason of the negligence of the superintendent of appellant, who had the management and control of the trains.

The third assignment submits as error the action of the court in refusing to permit the train dispatcher to testify to the contents of a dispatch sent by him to the telegraph operator at Del Rio, instructing him to hold the work train until the freight train arrived. The bill of exceptions shows that it was a rule of the company that all train orders be written in a book kept for that purpose in the office of the superintendent before sent; that this order was so written before it was sent; that the order was last seen in possession of J. M. Coleman, who had been an attorney for appellant, who lived in Houston; that J. H. Clark wrote to E. P. Hill to get the order; that Hill had replied that he had seen Coleman, and Coleman said he had lost the order. It is quite doubtful which was the original, the order in the book or the one Coleman may have had; but however that may be, there was not evidence of loss of the order sufficient to permit secondary evidence of its contents. When the possession of a document, of whose contents secondary evidence is desired to be intro-

duced, is shown to have been in a person who is living and easily accessible by ordinary process of the court trying the case, the affidavit of that person must be obtained showing the loss of the instrument, before secondary evidence of the contents of the instrument is admissible. There is neither affidavit of Hill nor Coleman, and the court rightly excluded the testimony. Dunn v. Choate, 4 Texas, 14; Vandergrif v. Piercy, 59 Texas, 373; Bray v. Aikin, 60 Texas, 691.

The court was requested by appellant to instruct the jury, that the evidence showing that the death occurred by reason of the negligence of the agent or servants of appellant, and there being no allegation or proof of gross negligence, that the jury should find for appellant. The allegation was that the superintendent had caused the accident by his negligence, and his negligence was the negligence of the corporation, and the court did not err in refusing to give the charge.

The question as to whether the orders given by the superintendent to the conductors and engineers of the colliding trains were ambiguous, conflicting, and calculated to mislead, was one of fact to be determined by, and it was fairly and fully submitted to the jury. The question of negligence hinged upon the construction to be placed upon the orders to the train men, and it would have been a gross usurpation of the powers of the jury to have given the third special charge asked by appellant. The court, in his able and impartial charge, instructs the jury, that the negligence of the superintendent in giving orders to trains under his control would, if proved, be the negligence of the company, and fairly submitted the determination of the question of negligence to the jury, and leaves it to them to pass upon whether the giving of the orders was or was not negligence on the part of appellant, and there was no error in this, as contended by appellant.

We can see no error in the charge given by the learned judge, but hold it to be an admirable and correct enunciation of the law applicable to the facts. There was some testimony by two witnesses that tended to show that at the time of the collision the railway and rolling stock of appellant were in the hands of the Southern Pacific Company and being operated by said company; that several railway companies, among the number being the appellant, had entered into a combination to better facilitate the transportation of through freight; and had placed the government of the combination under the management and control of a company called the Southern Pacific Company; that each road got the net earnings of its respective line; that the president of the Southern Pacific Company was the president of the appellant company; that the object of the combination was to expedite the carriage of through freight. Appellant claims that this agreement was a lease, the appellees claim it was a partnership, and the court submitted the question to the jury. They held it was a

partnership, and we are of the opinion that they were right. Railway v. Davis, decided at this term. [4 Texas Civ. App., 468.]

The only other assignment is that the verdict of the jury was excessive. There is no evidence in the record that shows that the jury was influenced by passion or other improper motive. The facts show a clear case of negligence upon the part of appellant, and that by reason of this negligence, this young man, just entering upon robust manhood, was deprived of his life, and at the same time his aged father and mother, who were dependent upon him for a support, were deprived of his care and protection. The jury awarded appellees $3000, and though he was but "a common laborer," as he is termed in appellant's brief, and only earning $1.10 per day, yet in view of the facts, we can not hold that the verdict was excessive. In the case of Railway v. Lehmberg, 75 Texas, 61, it was held, that a verdict for $10,000 for the death of a laborer who was earning $1.25 per day was not an excessive one, and the case was affirmed. This case was before the Supreme Court on appeal once before, and was reversed, but the errors indicated did not occur on the second trial. Railway v. Arispe, 81 Texas, 517. The question of negligence has been fairly presented to the jury, and the testimony shows that the orders given by the superintendent to the train men were ambiguous and calculated to mislead, and we can see no error in the judgment.

We are of the opinion that the judgment ought to be affirmed.

*Affirmed.*

Delivered November 15, 1893.

### ON MOTION FOR REHEARING.

FLY, Associate Justice.—The motion for rehearing in this case is based on the proposition that this court has not correctly found the facts as shown by the record, and it is insisted that the entire case of the appellees being upon documentary evidence alone, and that evidence having been considered by the appellate courts in the cases of Corona v. The Galveston, Harrisburg & San Antonio Railway Company, 17 Southwestern Reporter, 384, and this case on a former appeal, therefore this court should put the same construction upon the facts in the record before it that other courts did upon records of whose contents we can have but slight knowledge. In the first place, the whole of the testimony of appellees is not paper evidence, but the evidence of officers and employes of appellant show that the telegrams were obscure.

Division Superintendent R. H. Innes says that the telegrams should have read, "Train number 1 will pass train number 2 at———Station," and a like order would be sent to train number 2 to pass number 1 at ——— Station; and if one train should arrive before the other, it would not leave the station before the other arrived, without further orders.

Instead of such a telegram being sent, the work train was ordered to remain at work until 11:30 a. m., regardless of number 80, the train with which it collided, and the freight train number 80 is, in effect, instructed to pass Devil's River at 11:30 a. m.; and as both trains had the right of way at the same time, and the problem of causing two trains going in opposite directions on a single track to pass each other is one that has never been satisfactorily solved by any known rules of physics, there was a collision, and consequent damage. Again, Innes says, "The work train, under the construction I give its order, had the right to be on the track, as against freight train number 80, up to 11:30 a. m. at any point between Del Rio and Feely Station, and if it had been anywhere east of Devil's River before 11:30, it would necessarily have collided with freight train which had been ordered to Devil's River before 11:30; the time orders in evidence gave the right of the track to both trains at the same time between Devil's River and Del Rio up to 11:30."

The witness J. H. Douglas, train dispatcher (when he testified) of appellant, says: "The order to the work train and the one to the freight train mean just what they say; and the work train was supposed to be at work at the time that it acted on the order, and not lay up on a side track, and the order given to the work train means just what it said, to work until 11:30." This same witness was asked if the following order to the work train would not have been plainer, "Keep clear of number 80 between Devil's River Station and Feely after 11:30 a. m.," and he answered, "No, because such an order would have prevented the work train from working after 11:30, and would have compelled the work train to have been off the track between those points at 11:30." This is exactly what counsel for appellant contends that the order to the work train did require; but the officers of appellant do not seem to support them in their contention, but support the findings of fact of this court, that "The accident arose from the conflict of orders given by the division superintendent. The order to the work train required it to remain at place of work until 11:30 a. m., and then it was necessary to seek the nearest siding, which was Devil's River Station. That Van Vleck had sent dispatches to the conductors and engineers of the work train and freight train, which gave them both the right of way on a single track at time of collision."

Outside of the construction placed upon the order to the work train, we think that no other reasonable construction can be placed upon the order than that of the plain words themselves, "work until 11:30 a. m., regardless of number 80." There is nothing enigmatical in that sentence, and however its meaning may have been obscured by oracular interpretation of it on a former appeal of this case and in the Corona case, it comes before us in all its simplicity, copiously explained and elucidated by ex-

perts, who know what construction is to be put upon plain English language by employes of the railroad company. The work train conductor and engineer, as they should have done, obeyed the command of their superior officer; the collision was the result, and the life of young Arispe was lost.

But appellant insists that the Supreme Court has held the evidence in this case insufficient to sustain a verdict, and the question is res adjudicata. The Supreme Court has never passed upon the testimony in this record, and this court must necessarily be the judge of the sufficiency of the facts to support the judgment as presented by the record. This would be the case even if the case had been presented to this court before, and reversed because the facts were insufficient. This is self-evident.

There is no other objection urged or other reason given for the request for a rehearing than is herein discussed. The motion for rehearing is overruled.

*Motion overruled.*

Delivered December 6, 1893.

### ON MOTION TO AMEND CONCLUSIONS OF FACT.

FLY, Associate Justice.—Appellants have moved this court to amend its conclusions of fact filed in this case, by copying into said conclusions certain documentary evidence. Section 31 of the Act approved April 13, 1892, in relation to the organization of the Courts of Civil Appeals, provides: "After a cause is decided in the Court of Civil Appeals, a conclusion of the facts and law of the case shall be filed in said cause within thirty days after the decision of the same."

It will be seen that it is not the statement of facts that must be incorporated into the opinion of the court, or appended to the same, but the conclusions drawn by the court from the statement of facts; and if the precedent is laid that a party to a suit in this court can by motion have one part of the testimony inserted in full in the record, there could be no valid reason why it might not be insisted that the whole of the statement should be incorporated in the conclusions of fact. The statute sees fit to leave that much to the judgment and discretion of the Courts of Civil Appeals; the object, doubtless, being to have the facts and law presented in a terse and compact form, in order that the applications for writs of error may be more expeditiously passed upon by the Supreme Court, and without sending up the whole transcript. The Supreme Court, in a recent decision, has intimated that under certain conditions the correctness of the conclusions of fact of the Courts of Civil Appeals would be investigated from the full record, when the question of an affirmance or reversal of the case is being considered.

There can therefore exist no necessity for embodying the telegrams in

the conclusions of fact, especially as in the opinion on the case and on overruling the motion for rehearing, the substance of the telegrams is fully stated.

The motion is overruled.

*Motion refused.*

Delivered December 13, 1893.

Writ of error refused January 27, 1894, by Supreme Court.