## T. J. Lowe *et al.* v. The City of Guthrie.

1. OFFICIAL BONDS—*Sureties.* The contracts of sureties on official bonds are *strictissimi juris.*

2. STATUTORY BOND. A statutory bond is one required to be given by some statute.

3. CITY CLERK—*Bond.* The official bond of a city clerk is one required by statute, and is a statutory bond.

4. OFFICIAL BOND—*Contract—Extent of.* Sureties on an official bond contract with reference to the law requiring such bond, and regulating the duties of the principal, and these laws enter into and become a part of the contract as much as if incorporated into the bond itself. And the liability of sureties cannot be extended beyond the strict terms of their engagement, as contemplated at the time of giving bond.

5. SAME—*Obligation Authorized by Statute Valid.* An official bond which contains all the conditions required by statute, and also conditions in excess of those specified by statute, is valid, so far as it imposes obligations authorized by the statute; but the stipulations which are in excess of it may be rejected as surplusage. But if the bond falls so far short of the statutory requirements as to be invalid as a statutory bond, it may be treated as a common law bond, unless prohibited by some statute, or is against public policy.

6. SAME—*Construction—General Rule.* It is a general rule of construction applicable to official bonds, that general words cannot enlarge a liability fixed by particular words.

7. CITY CLERK—*Clerical Office.* The office of city clerk is, in contemplation of law, a purely clerical office, and in absence of a statute, or ordinance of the city authorizing the clerk to collect or receive monies due such city, he has no authority to make such collections or receive any monies due the city. And the sureties on his official bond do not contract with reference to any such unauthorized acts, and are not liable for defaults occurring on account of such acts.

8. CITY TREASURER—*Law Creates—Duties.* The law creates the office of city treasurer; defines its duties, and generally directs the payment of all monies belonging to the municipality to the treasurer, and it was never intended that the city clerk should be the custodian of any monies belonging to the city.

9. CITY CLERK—*Bond—Sureties Liable for What.* The statute requires the clerk to give a bond for the faithful discharge of the duties of his office. This comprehends every duty required of him by law or ordinance. It embraces the faithful accounting for, and payment to the city treasurer of, all monies that shall come into his hands by virtue of his office. And his

sureties can only be held liable for a failure to faithfully discharge such duties, although the terms of the bond may be more comprehensive.

10. OFFICIAL BONDS—*Sureties Liable, for What Acts.* Sureties on official bonds are liable only for acts of the principle done *virtuti officii*, and not for acts done *colore officil.*

11. LIQUOR LICENSE—*Payment to City Clerk Unauthorized.* The payment of money for liquor license to city clerk is not only unauthorized, but is in violation of the spirit of the law, which directs its payment to the city treasurer, and the sureties of the clerk are not liable on his official bond for such collections.

12. OFFICIAL BOND—*Sureties Not Entitled to Credit.* The sureties on the bond of the city clerk are not entitled to credit for the amount of balance due the clerk for salary, when it appears that the clerk is indebted in a large sum to the city on account of defaults for which his sureties are not liable. A part of his indebtedness being secured and a part unsecured, the creditor has a right to have the credit applied to the unsecured portion.

*Error from the District Court of Logan County.*

*John F. Stone,* for plaintiffs in error.

*B. T. Hainer,* for defendant in error.

The opinion of the court was delivered by

BURFORD, J.: This was an action by the city of Guthrie on the official bond of E. G. Millkan, to recover for monies collected by said Millikan during his term as city clerk of said city. The other defendants in said action are sureties on said bond.

The petition alleges that as city clerk, Millikan collected and failed to pay over the sum of five thousand three hundred and twenty-five dollars and eighty-five cents, collected for liquor license. The sum of two hundred and eighty dollars, collected from water consumers. The sum of nineteen dollars, collected from various parties for tapping water mains. All of which he had appropriated to his own use.

It was further alleged that the city had recovered a judgment against Millikan for the sum of three thou-

sand three hundred, seventy-nine dollars and two cents on account of said default which was still unpaid.

The bond is made an exhibit to the petition and is as follows:

"OFFICIAL BOND.

"TERRITORY OF OKLAHOMA, COUNTY OF LOGAN, ss:

"*Know all Men by these Presents:*

"That E. G. Millikan as principal, and John F. Stone, Lowe & Huston and O. R. Fegan, as sureties, are held and firmly bound unto the city of Guthrie and Territory of Oklahoma, in the sum of one thousand dollars, for the payment of which we bind ourselves, our heirs, executors and administrators.

"The condition of the above obligation is: That whereas, the above bound E. G. Millikan has been elected city clerk in and for the city of Guthrie.

"Now if the said E. G. Millikan shall render a true account of his office and of the doings therein to the proper authority, when required thereby or by law; and shall promptly pay over to the person or officers entitled thereto, all money which may come into his hands by virtue of his said office; and shall faithfully account for all the balances of money remaining in his hands at the termination of his office, and shall hereafter exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers, and sureties, or other property, appertaining to his said office, and deliver them to his successor, or to any person authorized to receive the same; and if he shall faithfully and impartially, without fear, favor, fraud or oppression, discharge all the other duties now or hereafter required of his office by law, then this bond to be void, otherwise in full force.

"Signed this 16th day of April, A. D., 1892.

"E. G. MILLIKAN.
"JOHN F. STONE.
"LOWE & HUSTON.
"O. R. FEGAN."

The sureties first moved for an order to require the

city to make her petition more definite and certain by specially pleading the authority whereby the city clerk collected the funds which it was alleged he had failed to account for. The court overruled this motion and the sureties excepted. They then demurred to the petition for the reason that said petition does not state facts sufficient to constitute a cause of action against them on said bond. The demurrer was overruled and exceptions saved. They then filed their answer, which consists of a general denial, also, specific denials that either of the class of funds claimed in the petition was collected by said Millikan by virtue of his office as city clerk.

Reply was filed, and cause submitted to the court for trial upon an agreed statement of facts, which stipulation is as follows:

"*Before the District Court in and for Logan County, Oklahoma Territory:*

"CITY OF GUTHRIE v. T. J. LOWE, *et al.*

"In the above stated case it is hereby stipulated and agreed by and between the parties to said case as follows, to-wit:

"First. That E. G. Millikan was duly elected, qualified and acting city clerk of the city of Guthrie as set forth in plaintiff's petition, and that on the 16th day of April, 1892, he gave the bond with the defendants as sureties, a copy of which bond is attached to plaintiff's petition.

"Second. That the said E. G. Millikan claiming authority as city clerk collected the sum of $280.02, money due the city of Guthrie for and on account of taxes due and collectable on dogs, known as the dog tax, and also on account of the tapping of water mains and water rates. (See No. 9.) Thirty-five dollars ($35.00) being collected from dog tax.

"Third. That the said E. G. Millikan collected over the sum of $3,000 due the city of Guthrie for and on account of liquor license.

"Fourth.   That the said E. G. Millikan failed and refused to pay over either of said sums or any · part thereof to the plaintiff, the city of Guthrie, or to any one for said city.

"Fifth.   That on the —— day of ————, 1893, the plaintiff, the city of Guthrie, brought suit in the district court aforesaid against the said Millikan for and on account of the collections hereinbefore mentioned, and that on the 12th day of May, 1894, the said plaintiff, the city of Guthrie, recovered a judgment against the said E. G. Millikan for the sum of $3,379.02, which said judgment remains in full force and effect.

"Sixth.   That there was not at the time said bond was executed and the money collected by said Millikan on account of liquor tax, any ordinance of the said city of Guthrie, making it the duty of the said E. G. Millikan or any part of his duty, to collect any of the said liquor tax.

"Seventh.   That there was not at the time said bond was executed and delivered, and at the time said money was collected any ordinance of said city defining and prescribing the duties of the said E. G. Millikan as city clerk wherein and whereby it was made any part of his duty to collect said liquor tax.

"Eighth.   That at the time said bond was executed and delivered, and at the time the money was collected as hereinbefore set forth, there was a duly elected, qualified and acting city treasurer of the city of Guthrie.

"Ninth.   Said water rents and main-tap funds being collectible under and by virtue of ordinances numbered 181 and 184, hereto attached.   Should judgment be rendered against said defendants upon account of either of the items set forth in stipulation number two and not upon the others the amount to be determined.

"Tenth.   That there was due the said E. G. Millikan, as salary the sum of seventy-eight dollars ($78.00) at the time he was removed from office.

"Eleventh.   That there was not at the time said bond was executed nor prior to April 28, 1893, any ordinance

providing for the collection of water rents or main-tap fund; that there was not at the time the said bond was executed and said money collected any ordinance of the city of Guthrie fixing the duties of the city clerk, except one providing that the dog tax should be paid to him.

"JOHN F. STONE,
"Atty. for Defendants.
"J. A. BAKER,
"Atty. for City.'

The court found for the city and rendered judgment against the sureties for the sum of one thousand dollars. Motion for new trial was overruled, and the cause comes to us for review.

The question presented by the record is: Are the sureties liable for collections made by the clerk for liquor licenses, water rents, and main tap funds?

In order to a proper determination of this question, it is necessary that we first determine the character and effect of the obligation of the sureties contained in this bond.

It is conceded by counsel on both sides that the contract of sureties on official bonds are *strictissimi juris*.

It is contended by counsel for the plaintiffs in error that the bond in question is a statutory bond, while counsel for the city claim that it is a common law obligation.

A statutory bond is one required by some statute. Where a statute requires a public officer to execute an official bond, such bond is a statutory bond.

The sureties on an official bond contract with reference to the law requiring such bond and regulating the duties of the officer; and the law of the office is in effect part of the contract, and has the same effect as though its provisions had been incorporated into the bond itself. The sureties are not bound beyond the strict terms of

their engagement, and their liability can not be extended by implication beyond the terms of their contract.

The sureties of Millikan undertook that he should faithfully perform all the duties required to be performed by him as clerk; that is, they became responsible for the faithful discharge of the duties properly appertaining to the office, and the extent of their liability must be determined from the bond itself; from the law in force at the time of the execution of the bond, and the intention of the parties at the time of the delivery of the bond. In the absence of anything appearing to show a different intention, in the giving of a statutory bond of a public officer, it will be presumed that the intention of the parties was to execute such a bond as the law required. And although its terms may bear a broader construction, the liability of the sureties will be confined to the measure of liability as contemplated by the law requiring such bond.

A bond which contains the conditions required by statute, and also conditions in excess of those specified by statute, is valid so far as it imposes obligations authorized by the statute, but the stipulations which are in excess of it, may be rejected as surplusage. (Murfree on Official Bonds, § 61.)

A different rule prevails where the bond falls so far short of the statutory requirements as to be invalid as an official bond. It may then be obligatory as a common law bond, unless prohibited by statute or against public policy. (Murfree, § 61; *Barnes v. Brookman*, 157 Ill. 317.)

It is a further rule of construction applicable to official bonds, that general words cannot enlarge a liability fixed by particular words. (Murfree, § 717.)

In view of the foregoing observations, let us see what

the law was requiring the bond in question; fixing the duties of the office of city clerk, and the terms of the bond that was executed.

Section 544, Oklahoma Statutes, 1893, creates the office of city clerk, and provides for his election and term of office.

Section 574 requires the county treasurer to pay to the city treasurer all moneys collected for any city of the first class, and take duplicate receipts therefor, and file one with the city clerk, and the clerk is required to enter all amounts in a book to be kept for that purpose, for reference in settlements with the treasurer.

Section 551 requires the city clerk to attest all warrants drawn by the mayor on the city treasury, and affix the city seal thereto, and keep an accurate record thereof in a book kept for that purpose.

Section 576 makes it the duty of the clerk to certify a list of those liable for poll tax to the county clerk to be placed on the tax roll.

Section 578 provides:

"All licenses shall be regulated by ordinance, and except for shows, theaters and other exhibitions, shall expire on the last day of April next after the same are issued. No license shall be issued until the amount prescribed therefor shall be paid to the city treasurer, and no license shall in any case be assigned or transferred. Licenses shall be signed by the mayor and clerk, and countersigned by the treasurer, and the clerk shall affix the corporate seal of the city thereto."

Section 622 requires the police judge to pay all fines to city treasurer, take duplicate receipts therefor, and file one with city clerk.

Section 634 is as follows:

"The duties, powers and privileges of all officers of every character, in any way connected with the city gov-

ernment not herein defined, shall be defined by ordinances of the city council, but this section shall not be construed as legalizing any franchise or grants heretofore made."

Section 636 requires the clerk to keep a journal of the proceedings of the council.

Section 637 requires the keeping of an ordinance book by the clerk in which he shall record all ordinances of the city.

The foregoing provisions embrace all the laws of the territory in relation to the duties of city clerk in force during the time Millikan was city clerk.

Section 547 provides that:

"The council shall require all city officers elected or appointed to take and subscribe an oath of office, and to give bonds for the faithful discharge of their duties."

There is no other provision of statute, or city ordinance, in reference to the bond required of a city clerk.

The statute creates the office of city treasurer; defines his duties, and directs generally that all moneys due the city shall be paid to him.

It will be observed that there is no law, and was none at any time, whereby the city clerk was authorized to receive or collect any funds on account of the city.

It is conceded in the agreed statement of facts, that the city had never adopted any ordinances regulating the duties of city clerk, or authorizing him to collect any moneys due the city except the dog tax, which he was authorized to collect. It does not appear whether this authority was given him before or after the execution of the bond in suit, and we will presume that it was prior to the execution of the bond. Now in view of the statutes and ordinances defining the duties of city clerk, and the general character of the office as contemplated by the

statutes, and the statute requiring a bond to be given "for the faithful discharge of his duties," what did the sureties obligate themselves to do in the bond in controversy?

The bond contains with some additional qualifications the statutory requirements that he will faithfully discharge the duties of his office. This was all the law required, and constituted a good statutory bond. The law in force during his term of office required nothing more, except in so far as the ordinances heretofore referred to required him to collect the dog tax. The bond contains the further provision "that he shall pay over to the person or office entitled thereto all money which may come into his hands by virtue of his said office; and shall faithfully account for all the balances of money remaining in his hands at the termination of his office." It is contended by counsel for the city that the above language embraces two distinct obligations, viz.: one to pay over all moneys that shall come into his hands by virtue of his office, and the other to faithfully account for all balances of money in his hands from any source at the termination of his office, and they insist upon standing upon the letter of the bond. We cannot accept this construction of the terms of the bond. It leads to absurd results.

By the letter of the bond as claimed by the city, the sureties would be liable for all funds in the hands of the clerk at the end of his term of office, whether they belonged to the city or not. This was not the intention of the parties, and the second clause must be construed with reference to the first, keeping the law of the obligation, and the nature of the contract in view. The meaning of the obligors, as shown by the whole instrument, was that the clerk should, whenever called

upon or required by law, promptly pay over to the person or office entitled thereto, all money which had come into his hands by virtue of his office, and at the termination of his office, account for, and pay over any balance of money in his hands, which has come into his hands by virtue of his office. This was the evident meaning and intention of the parties and was the kind of an obligation contemplated by law, and was the character of a bond that the statutes and city ordinance entered into and became part of.

A faithful discharge of the duties of his office, as required by law, embraced a faithful accounting for, and payment to the city treasurer of, all moneys that should come into the hands of the clerk by virtue of his office. And the bond in question is simply nothing more than a statutory bond upon which the sureties are liable for whatever sums of money that was collected by the clerk, by virtue of his office, or in other words, such sums as he was authorized to receive, and does not render them liable for moneys collected by him without authority of law or ordinance. To hold otherwise upon the record before us, would be to hold that the sureties contracted without reference to the law, or the duties of the office of clerk, or the powers of the city council. There is nothing to warrant such a holding.

The general character of the office of city clerk, as gathered from the law creating it, is clerical. The statute contemplates that all payments of money due the city will be made to the city treasurer, and that such officer will be required to give a bond adequate for such purposes. The very fact that the common council only required of the clerk a bond of one thousand dollars, i practically conclusive that the council did not contem-

plate that he would collect and have on hands thousands of dollars belonging to the city.

The payment of money for liquor license to the city clerk, instead of being authorized by law, was in direct violation of the spirit of the law. It is provided that no license shall be issued until the money is paid to the city treasurer. The license is required to be signed by the mayor and city clerk, but it is of no force until countersigned by the city treasurer. Before countersigning the license, it is the duty of the treasurer to collect the licence money, and if he countersigns the license without having received the money, he becomes liable instead of the clerk. The last act required by the law in order to make the license valid, is to have the city seal attached. This is done by the city clerk after the treasurer has been paid the money, and has countersigned the license When the license is returned to the city clerk for the seal, then he should charge the treasurer with the amount of the license fee, and seal and deliver the license to the purchaser. If the mayor and common council and city treasurer permited the clerk to collect money that the law did not authorize him to collect, and which from the general character of the office, the sureties on his official bond could never have contemplated that he would be permitted to do, then the loss must fall upon the public rather than upon those who never undertook to obligate themselves for such unofficial acts.

There is nothing in the ordinances or by-laws of the city regulating water rents or fees for tapping water mains that gives the clerk any authority to collect any money. It is provided by the ordinance that applications shall be made to the clerk, and the rates to consumers are fixed. But where any payee is named, it is the water commissioner, and there is no claim that the clerk was

ever acting as water commissioner.  Where no payee or collector is named in the rules, by-laws or ordinances, the law contemplates that payments are to be made to the city treasurer and not to the clerk.  In the absence of an ordinance giving this authority to the clerk, or imposing the duty on him, any moneys collected by him for such purposes do not come into his hands by virtue of his office, and his sureties are not liable therefor.

The amount collected for dog tax amounting to thirty-five dollars, comes within the terms of the bond, and for· this sum the sureties are liable with interest.

The question as to whether sureties on an official bond are liable for moneys received by their principal *colore officii*, as well as when received *virtuti officii* is discussed by counsel for the city.

We had occasion to examine this question in *Dysart et al. v. Lurty et al.* 41 Pac.724, and found the authorities somewhat conflicting, but we held in that case, that the weight of authority supported the doctrine that sureties on an official bond are only answerable for the acts of their principal while engaged in the performance of some duty imposed by law, or for an omission to perform such duty.  And that case is authority on the question here presented, and we adhere to the rule there expressed.

The liquor license fees, water rents, and main tap fees were all collected by Millikan *colore officii*, and for such acts his sureties are not liable.

There are a large class of cases where officers have been held liable on their official bonds for levying a writ upon the property of one not named in the writ, and we are cited these cases in support of the contention that such persons are liable for acts done *colore officii*.  These cases are a class unto themselves, and do not come within the rule applicable to cases where persons have

received money *colore officii*    An examination will make the distinction clear.    See *Dysart et al. v. Lurty et al. supra*, in which case the line of distinction is drawn.

The principles enunciated above are supported by the following authorities:    *Burrill v. Acker*, 23 Wend. 608; *Dobbin v. Bradley*, 17 Wend. 425; *Freeman v. Davis*, 7 Mass. 200; *Dedham Bank v. Chickring*, 21 Mass. 314; *Boston v. Moore et al.* 75 Mass. 126; *McCluskey v. Cromwell*, 11 N. Y. 593; *Ward v. State*, 81 N. Y. 406; *Ottenstein v. Alpaugh*, 9 Neb. 237; *Stall v. Hance*, 62 Ill. 52; *People v. Thompkins*, 74 Ill. 482; *Miller v. Stewart*, 9 Wheat 680; *White v. East Saginaw*, 43 Mich. 567; *San Jose v Welsh*, 4 Pac. 207; *Nalley v. Calloway Co.*, 11 Mo. 447; *State v. Bonner*, 72 Mo. 387; *Perry v. State*, 34 Ind. 135; *Arnold v. Green*, 45 Ind. 267; *Graham v. State*, 66 Ind. 387; *Gaussen v. United States*, 91 U. S. 584.

The foregoing cases cover all the questions arising and discussed in the case at bar, and an examination of them leads us to the results we have announced.

The sureties on an official bond are not in every instance liable for wrongful acts of the principal.    There are many instances in which the principal will be liable individually, wherein there is no breach of the official bond.    The sureties on an official bond become guarantors for the faithful discharge of all duties required by law, and that in the exercise of such duties as the law contemplates the principal will not abuse the authority vested in him.

When the principal exceeds his lawful authority and performs wholly unwarranted acts, unless such acts are done in an attempt to exercise his lawful authority, such acts are done *colore officii* and not *virtuti officii*, and the principal alone is liable.

In the case at bar, Millikan had no authority, either under the Statutes of the Territory, or the ordinances of the city to collect liquor licenses, water rents, or main tap fees, and having no such authority at the time of giving the bond, and none having been conferred on him during his term in any lawful manner, it cannot be held that his sureties undertook to be responsible for any such acts, any more than that they would be responsible to society for his good morals. He is alone liable for such funds, and no recovery can be had upon the bond for the same.

It is contended by the plaintiffs in error that the court erred in not allowing them credit for the balance due Millikan on his salary. As a general rule the sureties can set up any defense to a recovery that the principal might have made, and if in this case, the amount due from Millikan to the city was less than the penalty of the bond, then we think the sureties would be entitled to credit for the balance due on salary. But the penalty of the bond is only one thousand dollars, and this is all they are liable for in any event. While the facts show that Millikan owes the city considerably over three thousand dollars, for which it is not shown that the city has any security. It would be manifestly unjust to the the city to require her to pay the bondsmen this balance due on salary, while the principal, Millikan, is still indebted to the city in a large sum. That Millikan is entitled to this credit is not questioned. But as between the amount secured by the bond and the amount unsecured, the law will apply the credit to the unsecured, and the city is entitled to have it so applied. There was no error in this ruling.

Counsel for the city complain that the district court did not allow them interest upon the amount of their re-

Lowe *et al*. v. The City of Guthrie.

covery, which was the entire penalty of the bond. They made no motion for new trial; nor is there any cross petitition in error filed by them, and this question is not properly before us. Counsel for plaintiffs in error confess their liability for the amount collected by Millikan for tax on dogs.

The judgment of the district court is reversed and cause remanded with directions to the district court to render judgment for the city against the defendants for the sum of thirty-five dollars with interest from the date that Millikan should have paid same to the city.

Dale, C. J., who presided in the trial below not sitting; all the other Justices concurring.