**AMERICAN SURETY CO. OF NEW YORK v. STATE ex rel. BALE.   (No. 1254.)**

(Court of Civil Appeals of Texas.  Beaumont.  Oct. 22, 1925.)

1. **Evidence ⬤�き185(1)—Secondary evidence of contents of warehouse receipt improperly received in evidence, in absence of showing of effort to produce original other than notice given to surety in suit.**

In action against surety company for recovery for articles lost by warehouse company, principal on bond, without having joined principal, evidence as to contents of warehouse receipt held by principal was improperly received, where no effort to obtain original was shown or any excuse for it not being produced other than notice in petition to surety.

2. **Evidence ⬤�き185(1)—Secondary evidence of contents of instrument inadmissible, in absence of proof that party on whom notice to produce was served had control of instrument.**

In order to admit secondary evidence of existence and contents of an instrument, there must be some proof that party on whom notice to produce is served had control of instrument.

3. **Evidence ⬤�き250—Admission of statements in nature of admission of liability by principal out of presence of surety held error.**

In action against surety company to recover for articles lost by warehouse company, principal on bond which was not joined as defendant, admission of statements made by principal out of presence of surety, and after transaction complained of had been completed, statement being admission of liability, held error.

4. **Evidence ⬤�き250—Surety is bound only for actual conduct to principal, and not whatever he might say he had done.**

Surety is bound only for actual conduct to principal, and not whatever he might say he had done, and surety is entitled to proof of personal conduct by original evidence, excluding all declarations of principal made subsequent to act to which they relate and out of course of official duty or employment.

5. **Bonds ⬤�き50—Statutory bond must be construed in connection with statute.**

In statutory bond, it must be presumed that parties intended to execute such bond as stat-

ute required, and statute is part of bond as much as if incorporated therein, and bond must be construed in connection with statute.

6. **Warehousemen ⬤�き18—Surety on warehouse bond can be held liable for defalcation of principal only for one year after date of filing.**

Under Complete Tex. St. 1920 or Vernon's Ann. Civ. St. Supp. 1922, art. 7827½xx, warehouse bond was good for only one year from date of filing; hence surety could only be held liable for defalcation of principal for and during that period.

7. **Warehousemen ⬤�き18—Provision in bond for cancellation on five days' notice held not to have effect of making bond continued undertaking.**

While placing of provision in bond of warehouseman that it might be canceled on giving of five days' notice by surety company was placed in bond for benefit of surety, yet it was not for purpose, nor did it have effect, of making bond continued undertaking, but was simply for protection of surety within life of bond.

8. **Warehousemen ⬤�き18—Burden is on one alleging bond was in force and effect on certain date to prove same.**

Where plaintiff in suit on warehouseman's bond had alleged that bond was in force and effect on certain date, burden was on him to prove allegation.

9. **Warehousemen ⬤�き18—Allegation that bond was in effect on certain date, being after it would have been functus officio under law, held not an allegation that it was in effect by "renewal."**

General allegation that warehouseman's bond was in effect on certain date, which was after it would have been functus officio under law, was not an allegation that it was in effect by renewal, since "renewal" means that it is made anew, the extension of particular contract for another period of time.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Renewal.]

10. **Warehousemen ⬤�き18—Request that bond be canceled of record, made some time after expiration thereof, held not proof that bond had been renewed till such period.**

Where warehouseman's bond provided for cancellation by surety company on giving of five days' notice to county judge, letter of surety asking that bond be canceled, mailed after defalcation of principal, and some time after bond had expired, held not proof that bond had been renewed.

11. **Principal and surety ⬤�き59—Contract of surety must be strictly construed to impose only burdens clearly within its terms, and must not be extended by implication or presumption.**

Liability of sureties is matter of strict law, and contract of suretyship must be strictly construed to impose upon them only those burdens clearly within its terms, and must not be extended by implication or presumption.

---

**12. Principal and surety ⚡67—No recovery can be had for defalcation on bond after expiration, in absence of allegation and proof of renewal.**

Where, in action on bond to recover for defalcation after expiration thereof, no renewal contract was pleaded or proved, surety company is entitled to peremptory instruction.

Appeal from Dallas County Court; Wiley A. Bell, Judge.

Suit by the State of Texas, on the relation of E. D. Bale, against the American Surety Company of New York. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Stennis & Stennis, of Dallas, for appellant.

Burgess, Burgess, Sadler, Christman & Brundidge, of Dallas, for appellee.

O'QUINN, J. This is an appeal from a judgment rendered in the county court at law No. 2 of Dallas county, Tex. The following statement of the nature and result of the suit, which is adopted by appellee, is taken from appellant's brief:

"This is a suit by the state of Texas ex rel. E. L. Bale against American Surety Company of New York to recover $333.30.

"The petition alleges:

"A. That it is brought under the terms and conditions of title 131, Revised Civil Statutes 1920, entitled 'Warehouses and Warehouse-men.'

"B. That June 12, 1919, the American Surety Company of New York executed, as surety for the Southwestern Forwarding Company, a public warehouseman's bond; that the bond was approved as required by law on August 13, 1919, and that the bond is on file in the office of the county clerk of Dallas county; that said bond was in full force and effect from date of approval until November 21, 1921; that the bond, among other provisions, stipulated that the surety might cancel the bond at any time on five days' notice in writing sent by registered mail to the county judge.

"C. That the Southwestern Forwarding Company, principal on said bond, is not made a party defendant because notoriously insolvent.

"D. That E. L. Bale, for whose benefit suit is brought, deposited with the Southwestern Forwarding Company on January 4, 1921, certain tires and obtained warehouse receipts for same; that on May 5, 1921, the receipts, properly indorsed, were surrendered to the Southwestern Forwarding Company upon promise to deliver the tires; that the company failed to deliver a part of the tires covered by the surrendered receipts; that the receipts are not in the possession of plaintiff, but 'to the best of his knowledge and belief' are in the possession of the Southwestern Forwarding Company, the principal on the bond sued upon, and defendant is given notice to produce the receipts.

"E. That tires of the value of $333.30 were not delivered, and that failure to deliver constituted a breach of its duty 'to faithfully perform as a public warehouseman' to plaintiff's damage.

"Defense is made to the suit upon the following grounds:

"(a) Nonjoinder of Southwestern Forwarding Company.

"(b) Exception of no cause of action.

"(c) Special exceptions.

"(d) General denial.

"(e) Alleges bond not in force and effect at the time acts complained of were done."

The case was tried to a jury and verdict rendered for plaintiff and judgment accordingly entered. Motion for a new trial was overruled; hence this appeal.

J. H. Booth was the owner and manager of the Southwestern Forwarding Company, principal in the warehouseman's bond upon which suit is brought, and who signed the bond in question. Plaintiff alleged that he had surrendered the warehouse receipt given him by the Southwestern Forwarding Company showing the receipt by said company from plaintiff of the goods, wares, and merchandise, and for the loss of which this suit was brought, to said Southwestern Forwarding Company, and that "to the best of his knowledge and belief" said receipt was in the possession of said Southwestern Forwarding Company, principal in the bond, and in his petition gave defendant, surety, notice to produce said warehouse receipt in the trial of the case. The principal in the bond, the Southwestern Forwarding Company, was not made a party defendant, because, plaintiff alleged, it was notoriously insolvent, the suit on the bond being against the surety alone.

[1, 2] At the trial, plaintiff, over the objections of appellant, offered secondary evidence of the contents of the warehouse receipt. There was no evidence of any effort on the part of the plaintiff to obtain the original, nor any excuse for its not being produced, other than the notice in the petition to produce the original given defendant. We think the court should have excluded the evidence. None of the things necessary to the introduction of the evidence in the manner sought was shown. Plaintiff's petition alleged that the receipt was in the possession of Booth. Although Booth was the principal in the bond, he was not made a party to the suit. There was no showing that any effort was made to procure his attendance as a witness, or to have him testify in any manner; no effort to obtain the receipt from him, or any claim that the receipt was lost. Plaintiff contended himself simply with alleging that the principal in the bond was in possession of the receipt, and giving notice in his petition to the surety, appellant, to produce the receipt. Appellant had no control of the instrument in question. Booth, the principal in the bond, not being a party to the suit, occupied the position of a stranger to the suit. In order to admit secondary evidence of the existence and contents of an instrument, there must be some proof that the party upon whom the

notice to produce is served has control of the instrument. 2 Jones on Evidence, 286, § 221; G. H. & S. A. Ry. Co. v. Arispe, 5 Tex. Civ. App. 611, 23 S. W. 928, 24 S. W. 33; Trimble v. Edwards, 84 Tex. 497, 500, 19 S. W. 772.

[3, 4] Over objection of appellant, appellee was permitted to testify as to statements made by Booth, the principal in the bond, out of the presence of appellant, and after the transaction complained of by appellee had been completed, which statements were in the nature of an admission of liability and a promise to pay. We think this was error. As we understand the record, the statements made by Booth were made after the shortage had been discovered and when plaintiff was trying to get Booth to settle the matter. The surety is bound only for the actual conduct of the principal, and not whatever he might say he had done, and therefore the surety is entitled to proof of his personal conduct by original evidence, where it can be had, excluding all declarations of the principal made subsequent to the act to which they relate, and out of the course of his official duty or employment. Greenleaf on Evidence, vol. 1, § 187; Stearns on Suretyship (2d Ed.) p. 298; La Coste v. Bexar County, 28 Tex. 420; Cook County Liquor Co. v. Brown, 31 Okl. 614, 122 P. 167; Screwman v. Smith, 70 Tex. 168, 7 S. W. 793; McFarlane v. Howell, 16 Tex. Civ. App. 246, 43 S. W. 315; Insurance Co. v. Bonding Co., 146 Wis. 573, 131 N. W. 994, 40 L. R. A. (N. S.) 661, note 662.

Appellant, by several propositions, insists that as under the law, article 7827½xx, Texas Complete Statutes 1920, the bond was good only for one year, no liability against it is shown because the deposit of the tires was made with the Southwestern Forwarding Company more than one year after the bond sued on was approved.

The undisputed facts show that the Southwestern Forwarding Company was a corporation, incorporated and doing a public warehouse business under and by virtue of the laws of the state of Texas; that on June 12, 1919, said company executed its bond to do business as a public warehouseman, with appellant, the American Surety Company of New York as surety, conditioned as required by law, which bond was filed with and approved by the county clerk of Dallas county, Tex., on August 13, 1919; that on January 4, 1921, plaintiff deposited with said Southwestern Forwarding Company certain automobile tires, receiving deposit receipts therefor; that on about May 5, 1921, plaintiff surrendered said deposit receipts to said Southwestern Forwarding Company, and tendered to it all warehouse charges due on said tires, and demanded possession of all the tires so held by it for plaintiff. Plaintiff claims that the Southwestern Forwarding Company failed to return to it 20 tires, for the value of which this suit is brought.

The law under and by virtue of which the bond in question was executed is article 7827½xx, Vernon's Complete Statutes of Texas 1920, which reads:

"Any person, firm, corporation, partnership, or association of persons, may become a public warehouseman under the terms and provisions of this act by filing with the county clerk of the county in which he is located, and proposes to do business, a good and sufficient bond in the sum of five thousand dollars on the condition that he will conduct his business in accordance with the terms and provisions of this act.

"Upon the filing and approval of such bond with the county clerk, it shall be the duty of the county clerk to immediately certify such fact to the commissioner of markets and warehouses, of the state of Texas. Any one injured by the violation of the terms of the bond, and the provisions of this act may recover damages to the extent of said bond; should said bond become impaired by recovery, or otherwise, the commissioner of markets and warehouses, may require such public warehouseman to file an additional bond, but in no event shall such additional bond be for a greater amount than five thousand dollars. The bond required thereunder shall be good for the term of one year from the date of filing and the right to continue as a public warehouseman shall be conditioned upon the renewal of said bond from year to year, according to the terms of this act. The form of the bond required hereunder shall be prescribed by the commissioner of markets and warehouses, and the bond provided for herein may be made by any surety company authorized to do business under the laws of the state of Texas; or by two solvent sureties to be approved by the county clerk of the county in which such public warehouseman may desire to do business."

The bond reads:

"Bond of Public Warehousemen.

"(Corporation)

"Whereas, the undersigned has applied to W. S. Skiles, clerk of the county court of Dallas county, Texas, for a certificate authorizing it to carry on and conduct the business of a public warehouseman in Dallas county, Tex., at the following named and located warehouses, to wit: 1301-9 Broom street, Dallas, Texas.

"And, whereas, it is made and provided by the laws of Texas that a bond shall be given before such a certificate be issued:

"Now therefore, we the said Southwestern Forwarding Company, as principal, and the other subscribers hereto as sureties, do acknowledge ourselves indebted to and held and firmly bound and obligated to pay to the state of Texas the penal sum of five thousand dollars, for the payment of which well and truly to be made, we do jointly and severally bind ourselves, our legal representatives, successors and assigns firmly and by these presents.

"The condition of this obligation is such, however, that should the Southwestern Forwarding Company faithfully perform its duty as a public warehouseman, then this obligation is to be null and void; otherwise the same is to remain in full force and effect.

"In testimony whereof, witness our hands this the 12th day of June, A. D. 1919. [Signed] Southwestern Forwarding Co., J. H. Booth,

Owner and Mgr. [Seal.] American Surety Company of New York, by E. K. Egan, Res. Vice President. W. T. Decherd, Res. Sect'y. "Approved Aug. 13th, 1919. W. S. Skiles, Co. Clerk, by D. C. Whiteley, Dy.

"It is specifically agreed and understood that the surety may cancel this bond at any time on five days' notice in writing sent by registered mail to the county judge, provided this notice does not affect accrued liability."

· [5, 6] The bond being a statutory bond, it must be presumed that the parties intended to execute such bond as the statute required, and such statute is a part of the bond, as much so as if incorporated in it, and the bond must be construed in connection with the statute. 9 C. J. § 56, p. 34; Lowe v. City of Guthrie, 4 Okl. 287, 44 P. 198. The bond was executed in pursuance to the requirements of the statute, and the obligors· are presumed to have known the terms of the statute and to have contracted accordingly. Under the law, article 7827½xx, supra, the bond was good for only one year, from the date of its filing, August 13, 1919, or until August 13, 1920. Therefore, the surety, appellant, could only be held liable for the defalcations of the principal, the Southwestern Forwarding Company, for and during that period. The merchandise was not deposited with the Southwestern Forwarding Company until January 4, 1921, more than a year after the filing of the bond, and more than four months after the bond, under the law, had expired. The loss of the tires claimed to have been suffered did not occur until May 5, 1921, more than eight months after the bond had expired. Under these facts, no liability of appellant is shown. Article 7827½xx, Complete Texas Statutes 1920; Flores v. Howth, 5 Tex. 329; Murphy v. Menard, 14 Tex. 62; State v. Elevator Co., 39 N. D. 235, 167 N. W. 223, L. R. A. 1918E, 233; Commonwealth v. Hinson, 143 Ky. 428, 136 S. W. 912, L. R. A. 1917B, 139, Ann. Cas. 1912D, 291; Bank v. Samuelson, 82 Neb. 532, 118 N. W. 81; Treasurer v. Mann, 34 Vt. 371, 80 Am. Dec. 688; Blades v. Dewey, 136 N. C. 176, 48 S. E. 627, 103 Am. St. Rep. 924, note 933, 1 Ann. Cas. 379; Crawford v. Ozark Ins. Co., 97 Ark. 549, 134 S. W. 951; Lowe v. City of Guthrie, 4 Okl. 287, 44 P. 198; U. S. Fidelity & Guaranty Co. v. Fultz, 76 Ark. 410, 89 S. W. 93; 32 Cyc. p. 77; 22 R. C. L. § 199, p. 513; section 201, p. 514; Brandt on Suretyship vol. 1, § 186.

Appellee admits that the bond, under the law, was good for only a year from the date of its filing, and that it would therefore expire on August 13, 1920, but insists that the expression "It is specifically agreed and understood that the surety may cancel this bond at any time on five days' notice in writing sent by registered mail to the county judge, provided this notice does not affect accrued liability," which appears in the bond after the signatures of the parties, was placed there for the benefit of the surety and to enable it to cancel the bond within the period for which it was liable under the bond, in case it desired to do so, and that as James G. Lucey, manager of the defendant surety company, on November 21, 1921, sent a letter to the county clerk of Dallas county calling his attention to said portion of said bond and requesting that he note on his records the request for the cancellation of said bond, in accordance with said provision, was a recognition that the bond was in force at that time, and evidence that the bond had been renewed from year to year as required by law.

[7-10] We agree with appellee that the portion of the bond in question was placed in the bond for the benefit of the surety. However, we do not think it was for the purpose, nor did it have the effect, of making the bond to be a continuing undertaking, but that it was for the protection of the surety to be exercised within the life of the bond, as permitted by the statute, under and by virtue of which it was executed; that is, for the purpose of permitting the surety to cancel the bond within the statutory period of one, year after its filing. The statute specifically provides that the bond could be good for only one year, and the clause in question could not make the bond good for any longer period. How could this bond be in force November 21, 1921, more than two years after its approval and filing, when the statute specifically says it shall be good for only one year after its filing. The idea of its being a continuing obligation merely because of an alleged agreement of the parties cannot be entertained. If the bond was in force at the date insisted by appellee, it could only be so by actual and lawful renewal. Appellee having alleged that the bond was in force and effect on May 5, 1921, the burden was on him to prove the allegation. There is no proof in the record that the bond was in any manner renewed from year to year. In order to prove that the bond was in effect by renewal, its renewal must have been alleged. Plaintiff did not allege in his petition that there had been any renewal of the bond. The general allegation that the bond was in effect on a certain date, which was after it would have been functus officio under the law, was not an allegation that it was in effect by a renewal. "Renew" means to make again, to revive, to make· over; and "renewal" means that which is made anew, the extension of the particular contract for another period of time. 34 Cyc. pp. 1330, 1331. A renewal of the bond would have constituted a separate and distinct contract for the period of time covered by the renewal. De Jernette v. Fidelity & Casualty Co., 98 Ky. 558, 33 S. W. 829. There was no notation nor anything on the bond to show that any premium of consideration for a renewal of the bond had been paid, or that the bond in any manner had been renewed. It was as necessary to prove the renewal of the bond as it

was to prove the original execution of the same. No such allegation was in appellee's petition, and no such proof was made. Without such allegation, proof of renewal could not have been made. However, if it should be that the allegation that the bond was in force was sufficient to let in proof of its renewal, which we do not believe, still there is no proof of renewal. The contention of appellee that the letter of appellant's manager to the county clerk, asking that it be noted on the record that the bond was cancelled, we do not think could be held to prove that the bond had been renewed. To so hold would be to hold a mere presumption full proof.

[11] The liability of sureties is a matter of strict law, and a contract of suretyship must be strictly construed to impose upon them only those burdens clearly within its terms, and must not be extended by implication or presumption. State v. Evans, 32 Tex. 201; H. & S. Engineering Co. v. Turney, 110 Tex. 153, 216 S. W. 621; 32 Cyc. 73; 22 R. C. L. § 199, p. 513; section 201, p. 514.

[12] An action upon the original bond must necessarily be for defalcation during its period of one year. An action upon a renewal of the bond must be for defalcation during a period after the expiration of the original bond, and therefore based upon a contract of renewal. No such contract was pleaded, and no such contract was proved. The peremptory instruction requested by appellant should have been given.

The judgment of the court below is reversed, and judgment is here rendered for appellant.

Reversed and rendered.